MICHAEL W. BIEN – 096891
LISA ELLS – 243657
VAN SWEARINGEN – 259809
ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
Email:        mbien@rbgg.com
                  lells@rbgg.com
                  vswearingen@rbgg.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY DAVID RAY ROBERTSON,<br><br>              Plaintiff,<br><br>      v.<br><br>CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, CONTRA COSTA HEALTH SERVICES, SHERIFF DAVID O. LIVINGSTON; UNDERSHERIFF MICHAEL V. CASTEN; LIEUTENANT BROOKS; LIEUTENANT VANNOY; SERGEANT MARCHESE; SERGEANT BAILEY; DEPUTY MOSCHETTI; DEPUTY ENGELSTAD; DEPUTY CLAWSON; DEPUTY SPRINGER; DEPUTY GARCIA; DEPUTY DEMICHEL; DEPUTY EMORY; DEPUTY SIX; DEPUTY HALL; DEPUTY FRANCIS; DEPUTY DUDLEY; DEPUTY SWIFT; DEPUTY MCMILLAN; DEPUTY NELLER; DEPUTY SMITH; DEPUTY FERNANDEZ; DEPUTY HUME; DEPUTY CAI; DEPUTY BROOK; DEPUTY RIDEOUT; DEPUTY ROSAS; DEPUTY FOUI; DEPUTY VAN SCOY; DEPUTY CUBIT; DEPUTY RODRIGUEZ; DEPUTY VARADAY; MICHAEL ELDER; MELVORA JACKSON; CANDACE KUNZ TAO; MARJORIE FRANK; PATRICIA POSADA; DAVID EZRA; and DOES 1 through 20, inclusive,<br><br>              Defendants. | Case No. 3:15-cv-02549-WHO<br><br>**FIRST AMENDED COMPLAINT**<br><br>Judge:  Hon. William H. Orrick<br><br>Trial Date:        None Set<br><br>(1)  **Cruel and Unusual Punishment:** Violations of 8th Amendment of U.S. Constitution, Article I, Section 17 of California Constitution, and California Civil Code § 52.1<br><br>(2)  **Punitive Conditions of Confinement in Violation of Due Process:**  Violations of 14th Amendment of U.S. Constitution, Article I, Section 7 of California Constitution, and California Civil Code § 52.1<br><br>(3)  **Failure to Provide Reasonable Accommodations to Prisoners with Disabilities:**  Violations of Americans with Disabilities Act, Rehabilitation Act, California Government Code § 11135, and California Civil Code § 52.1<br><br>(4)  **Deprivation of Rights for Mentally Ill and Non-LPS Patients:**  Violations of California Civil Code § 52.1; California Welfare & Institutions Code § 5325.1; California Code of Regulations, Title 9, §§ 883, 884; California Penal Code § 1026.2 |

# INTRODUCTION

1.    In 1996, Plaintiff RANDY DAVID RAY ROBERTSON was committed under civil process to the Department of State Hospitals for life or until his sanity was restored.  To date, he has not had his sanity restored.  On or about June 11, 2012, Plaintiff ROBERTSON was removed to the Martinez Detention Facility and the custody of Defendants to prepare for and attend a hearing on his petition for restoration of sanity.

2.    Upon booking at the Martinez Detention Facility, Plaintiff ROBERTSON identified himself as a civil detainee.  Persons who have been involuntarily committed are entitled as a matter of due process to more considerate treatment and conditions of confinement than sentenced inmates whose conditions of confinement are designed to punish.  Despite these rights, as well as his right to be free of cruel and unusual punishment, Defendants incarcerated Plaintiff ROBERTSON in the administrative segregation units at the Martinez Detention Facility.  Commonly referred to as "The Hole" by inmates and jail staff alike, these units represent the most restrictive long-term housing options among all detention facilities in Contra Costa County.  During the ensuing months and years, Plaintiff ROBERTSON told dozens of his jailors and mental health counselors that he was a civil, not criminal, detainee, and that he had a right to less punitive conditions of confinement as well as adequate mental health care.  Yet no one corrected the situation. For nearly three years, Plaintiff ROBERTSON complained of his treatment but nevertheless lived in conditions of confinement far more punitive than those experienced by other sentenced inmates incarcerated in Contra Costa County.

3.    Plaintiff ROBERTSON suffered while inappropriately incarcerated:  he decompensated and became depressed as a result of the loss of privileges and freedoms to which he was rightfully accustomed as a civil detainee.  Defendants failed to provide him with medication or therapy, as he requested.  To his further detriment, he was also exposed to multiple physical attacks by sentenced inmates in his administrative segregation module. Through this lawsuit, Plaintiff ROBERTSON challenges Defendants' failures to provide adequate conditions of confinement, accommodate his psychiatric disability, and provide

[2931239-11]

1  adequate mental health care, programming, and treatment.

2      4.      Plaintiff ROBERTSON seeks compensatory and punitive damages, as well

3  as declaratory and injunctive relief for Defendants' violations of his rights under (1) the

4  Eighth and Fourteenth Amendments of the United States Constitution, pursuant to 42

5  U.S.C. § 1983; (2) Article I, Sections 7 and 17 of the California Constitution; (3) the

6  Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; (4) Section 504 of

7  the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act"); (5) California Government

8  Code §§ 11135, *et seq.*; and (6) California Civil Code § 52.1.

9                              **JURISDICTION**

10      5.      This Court has jurisdiction over the claims brought under federal law

11  pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over the claims

12  brought under California law pursuant to 28 U.S.C. § 1367.  Plaintiff seeks declaratory and

13  injunctive relief under 28 U.S.C. §§ 1343, 2201, and 2202, 29 U.S.C. § 794a, 42 U.S.C.

14  §§ 1983 and 12117(a), California Government Code § 11135, California Civil Code § 52.1,

15  California Penal Code § 1026.2, and Article I, Sections 7 and 17 of the California

16  Constitution.

17                                  **VENUE**

18      6.      Venue is properly in this Court, pursuant to 28 U.S.C. § 1391(b)(2), in that

19  substantial acts and omissions giving rise to Plaintiff's claims occurred in this District, and

20  one or all of the Defendants reside in this District.

21      7.      Intradistrict venue is appropriate in this division pursuant to Federal Rule of

22  Civil Procedure 3 and N.D. Cal. L.R. 3-2(c)-(d) because a substantial part of the events or

23  omissions giving rise to Plaintiff's claims occurred in the counties served by this division.

24                                 **PARTIES**

25      8.      On February 22, 1996, Plaintiff ROBERTSON was committed to the

26  Department of State Hospitals ("DSH") for life or until his sanity was restored, after being

27  found not guilty by reason of insanity under California Penal Code section 1026 for

28  violations of California Penal Code sections 12310(b), 245(a)(1), and 451(a).  Plaintiff

ROBERTSON was admitted to Atascadero State Hospital on March 28, 1996, transferred to Patton State Hospital on August 1, 1996, and then transferred to Napa State Hospital on May 12, 1999. Subsequent to several other inter-agency transfers, on September 22, 2011, Plaintiff ROBERTSON was discharged from Napa State Hospital and administratively transferred to the California Department of Corrections and Rehabilitation ("CDCR") pursuant to California Welfare & Institutions Code section 7301. Plaintiff ROBERTSON was subsequently transferred to Martinez Detention Facility on June 11, 2012 to prepare for and attend a hearing on his petition for restoration of sanity. He was incarcerated at Martinez Detention Facility continuously until May 21, 2015. During the entirety of Plaintiff's incarceration at Martinez Detention Facility, Plaintiff was detained under civil process and was neither a sentenced inmate nor a pre-trial detainee. Plaintiff is currently detained at Coalinga State Hospital. Plaintiff ROBERTSON is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(20)(B), and California Government Code § 12926(j). To date, no court has found Plaintiff to have his sanity restored.

9.      Defendant COUNTY OF CONTRA COSTA (the "COUNTY" or "CONTRA COSTA COUNTY") is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant COUNTY operates and manages several detention centers within the COUNTY, including the Martinez Detention Facility. Defendant COUNTY is, and was at all relevant times mentioned herein, responsible for the actions and/or omissions, training,  and the policies, procedures, practices, and customs of the CONTRA COSTA COUNTY OFFICE OF THE SHERIFF and CONTRA COSTA HEALTH SERVICES, and their respective employees and/or agents. The COUNTY by law retains the ultimate authority over and responsibility for the mental health care, treatment, and safekeeping of Plaintiff. The COUNTY employs 50 or more persons.

10.     Defendant CONTRA COSTA COUNTY OFFICE OF THE SHERIFF (the "SHERIFF'S OFFICE") is a public entity, duly organized and existing under the laws of the State of California. Sheriff David O. Livingston is the elected Sheriff of the County of Contra Costa. The SHERIFF'S OFFICE is responsible for the day-to-day operations of the

1  County's Jail facilities, including promulgating policies and procedures for the operation

2  of the facilities.  The SHERIFF'S OFFICE retains the ultimate authority over and any

3  responsibility for the mental health care, treatment, and safekeeping of inmates in the Jail.

4  The SHERIFF'S OFFICE employs 50 or more persons.

5        11.    Defendant CONTRA COSTA HEALTH SERVICES ("CCHS") is a public

6  entity, duly organized and existing under the laws of the State of California.  CCHS is

7  responsible for providing health care services to inmates in the Jail, including mental

8  health care.  At all times when CCHS and its employees provide mental health care to

9  inmates in the Jail, CCHS and its employees have acted and continue to act under color of

10  state law.  CCHS employs 50 or more persons.

11        12.    Defendant SHERIFF DAVID O. LIVINGSTON is, and was at all relevant

12  times mentioned herein, the Sheriff of CONTRA COSTA, the highest position in the

13  SHERIFF'S OFFICE.  As Sheriff, Defendant LIVINGSTON is and was responsible for the

14  hiring, screening, training, retention, supervision, discipline, counseling, and control of all

15  SHERIFF'S OFFICE custodial employees and/or agents and DOES I through 20.

16  Defendant LIVINGSTON is and was charged by law with the administration of the

17  Martinez Detention Facility.  Defendant LIVINGSTON is and was also responsible for the

18  promulgation of the policies and procedures and allowance of the practices/customs

19  pursuant to which the acts of the SHERIFF'S OFFICE alleged herein were committed.

20  Defendant LIVINGSTON is being sued in his individual and official capacities.

21        13.    Defendant UNDERSHERIFF MICHAEL V. CASTEN is, and was at all

22  relevant times mentioned herein, the Undersheriff of Martinez Detention Facility, the

23  second highest position in the SHERIFF'S OFFICE.  As Undersheriff, Defendant

24  CASTEN is and was responsible for the hiring, screening, training, retention, supervision,

25  discipline, counseling, and control of all SHERIFF'S OFFICE custodial employees and/or

26  agents and DOES I through 20.  Defendant CASTEN is and was charged by law with the

27  administration of the Martinez Detention Facility.  Defendant CASTEN is and was also

28  responsible for the promulgation of the policies and procedures and allowance of the

1   practices/customs pursuant to which the acts of the SHERIFF'S OFFICE alleged herein

2   were committed.  Defendant CASTEN is being sued in his individual and official

3   capacities.

4          14.     Defendant LIEUTENANT BROOKS, whose full name and identity are

5   presently unknown to Plaintiff and can be discerned only as "LIEUTENANT BROOKS"

6   from interactions with Plaintiff ROBERTSON, is identified as LIEUTENANT BROOKS

7   until such time that Plaintiff discovers his true identity and amends the instant complaint

8   accordingly.  Defendant LIEUTENANT BROOKS is and was responsible for the

9   administration of the Martinez Detention Facility.  Defendant LIEUTENANT BROOKS is

10   and was also responsible for the promulgation of the policies and procedures and

11   allowance of the practices/customs pursuant to which the acts of the SHERIFF'S OFFICE

12   alleged herein were committed.  Defendant LIEUTENANT BROOKS had direct contact

13   with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at

14   Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff

15   ROBERTSON's commitment.  Plaintiff ROBERTSON told LIEUTENANT BROOKS

16   that he was entitled to less restrictive conditions of confinement by nature of his civil

17   commitment status; LIEUTENANT BROOKS failed to take necessary steps to provide

18   adequate accommodations.  Defendant LIEUTENANT BROOKS is being sued in his

19   individual and official capacities.

20          15.     Defendant LIEUTENANT VANNOY, whose full name and identity are

21   presently unknown to Plaintiff and can be discerned only as "LIEUTENANT VANNOY"

22   from interactions with Plaintiff ROBERTSON, is identified as LIEUTENANT VANNOY

23   until such time that Plaintiff discovers his true identity and amends the instant complaint

24   accordingly.  Defendant LIEUTENANT VANNOY is and was responsible for the

25   administration of the Martinez Detention Facility.  Defendant LIEUTENANT VANNOY

26   is and was also responsible for the promulgation of the policies and procedures and

27   allowance of the practices/customs pursuant to which the acts of the SHERIFF'S OFFICE

28   alleged herein were committed.  Defendant LIEUTENANT VANNOY had direct contact

with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment. Plaintiff ROBERTSON told LIEUTENANT VANNOY that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; LIEUTENANT VANNOY failed to take necessary steps to provide adequate accommodations. Defendant LIEUTENANT VANNOY is being sued in his individual and official capacities.

16.     Defendant SERGEANT MARCHESE, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "SERGEANT MARCHESE" from interactions with Plaintiff ROBERTSON, is identified as SERGEANT MARCHESE until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly. Defendant SERGEANT MARCHESE was at all relevant times mentioned herein a Sergeant Officer at Martinez Detention Facility. Defendant SERGEANT MARCHESE had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment. Plaintiff ROBERTSON told SERGEANT MARCHESE that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; SERGEANT MARCHESE failed to take necessary steps to provide adequate accommodations. Defendant SERGEANT MARCHESE is being sued in his individual and official capacities.

17.     Defendant SERGEANT BAILEY, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "SERGEANT BAILEY" from interactions with Plaintiff ROBERTSON, is identified as SERGEANT BAILEY until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly. Defendant SERGEANT BAILEY was at all relevant times mentioned herein a Sergeant Officer at Martinez Detention Facility. Defendant SERGEANT BAILEY had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of

1    Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told SERGEANT

2    BAILEY that he was entitled to less restrictive conditions of confinement by nature of his

3    civil commitment status; SERGEANT BAILEY failed to take necessary steps to provide

4    adequate accommodations.  Defendant SERGEANT BAILEY is being sued in his

5    individual and official capacities.

6        18.    Defendant DEPUTY MOSCHETTI, whose full name and identity are

7    presently unknown to Plaintiff and can be discerned only as "DEPUTY MOSCHETTI"

8    from interactions with Plaintiff ROBERTSON, is identified as DEPUTY MOSCHETTI

9    until such time that Plaintiff discovers his true identity and amends the instant complaint

10   accordingly.  Defendant DEPUTY MOSCHETTI was at all relevant times mentioned

11   herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY

12   MOSCHETTI had direct contact with Plaintiff ROBERTSON over the course of Plaintiff

13   ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the

14   civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told

15   DEPUTY MOSCHETTI that he was entitled to less restrictive conditions of confinement

16   by nature of his civil commitment status; DEPUTY MOSCHETTI failed to take necessary

17   steps to provide adequate accommodations.  Defendant DEPUTY MOSCHETTI is being

18   sued in his individual and official capacities.

19       19.    Defendant DEPUTY ENGELSTAD, whose full name and identity are

20   presently unknown to Plaintiff and can be discerned only as "DEPUTY ENGELSTAD"

21   from interactions with Plaintiff ROBERTSON, is identified as DEPUTY ENGELSTAD

22   until such time that Plaintiff discovers his true identity and amends the instant complaint

23   accordingly.  Defendant DEPUTY ENGELSTAD was at all relevant times mentioned

24   herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY

25   ENGELSTAD had direct contact with Plaintiff ROBERTSON over the course of Plaintiff

26   ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the

27   civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told

28   DEPUTY ENGELSTAD that he was entitled to less restrictive conditions of confinement

by nature of his civil commitment status; DEPUTY ENGELSTAD failed to take necessary

steps to provide adequate accommodations.  DEPUTY ENGELSTAD routinely monitored

the audio in Plaintiff ROBERTSON's cell without Plaintiff ROBERTSON's notice.

Defendant DEPUTY ENGELSTAD is being sued in his individual and official capacities.

20.     Defendant DEPUTY CLAWSON, whose full name and identity are

presently unknown to Plaintiff and can be discerned only as "DEPUTY CLAWSON" from

interactions with Plaintiff ROBERTSON, is identified as DEPUTY CLAWSON until such

time that Plaintiff discovers his true identity and amends the instant complaint accordingly.

Defendant DEPUTY CLAWSON was at all relevant times mentioned herein a Deputy

Officer at Martinez Detention Facility.  Defendant DEPUTY CLAWSON had direct

contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's

incarceration at Martinez Detention Facility, and had actual notice of the civil nature of

Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY

CLAWSON that he was entitled to less restrictive conditions of confinement by nature of

his civil commitment status; DEPUTY CLAWSON failed to take necessary steps to

provide adequate accommodations.  Defendant DEPUTY CLAWSON is being sued in his

individual and official capacities.

21.     Defendant DEPUTY SPRINGER, whose full name and identity are presently

unknown to Plaintiff and can be discerned only as "DEPUTY SPRINGER" from

interactions with Plaintiff ROBERTSON, is identified as DEPUTY SPRINGER until such

time that Plaintiff discovers his true identity and amends the instant complaint accordingly.

Defendant DEPUTY SPRINGER was at all relevant times mentioned herein a Deputy

Officer at Martinez Detention Facility.  Defendant DEPUTY SPRINGER had direct

contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's

incarceration at Martinez Detention Facility, and had actual notice of the civil nature of

Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY

SPRINGER that he was entitled to less restrictive conditions of confinement by nature of

his civil commitment status; DEPUTY SPRINGER failed to take necessary steps to

provide adequate accommodations.  Defendant DEPUTY SPRINGER is being sued in his individual and official capacities.

22.     Defendant DEPUTY GARCIA, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "DEPUTY GARCIA" from interactions with Plaintiff ROBERTSON, is identified as DEPUTY GARCIA until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly. Defendant DEPUTY GARCIA was at all relevant times mentioned herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY GARCIA had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY GARCIA that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; DEPUTY GARCIA failed to take necessary steps to provide adequate accommodations.  Defendant DEPUTY GARCIA is being sued in his individual and official capacities.

23.     Defendant DEPUTY DEMICHEL, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "DEPUTY DEMICHEL" from interactions with Plaintiff ROBERTSON, is identified as DEPUTY DEMICHEL until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly.  Defendant DEPUTY DEMICHEL was at all relevant times mentioned herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY DEMICHEL had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY DEMICHEL that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; DEPUTY DEMICHEL failed to take necessary steps to provide adequate accommodations.  Defendant DEPUTY DEMICHEL is being sued in his individual and official capacities.

24.     Defendant DEPUTY EMORY, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "DEPUTY EMORY" from interactions with Plaintiff ROBERTSON, is identified as DEPUTY EMORY until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly. Defendant DEPUTY EMORY was at all relevant times mentioned herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY EMORY had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY EMORY that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; DEPUTY EMORY failed to take necessary steps to provide adequate accommodations.  Defendant DEPUTY EMORY is being sued in his individual and official capacities.

25.     Defendant DEPUTY SIX, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "DEPUTY SIX" from interactions with Plaintiff ROBERTSON, is identified as DEPUTY SIX until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly.  Defendant DEPUTY SIX was at all relevant times mentioned herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY SIX had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY SIX that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; DEPUTY SIX failed to take necessary steps to provide adequate accommodations.  Defendant DEPUTY SIX is being sued in his individual and official capacities.

26.     Defendant DEPUTY HALL, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "DEPUTY HALL" from interactions with Plaintiff ROBERTSON, is identified as DEPUTY HALL until such time that Plaintiff

[2931239-11]

1   discovers his true identity and amends the instant complaint accordingly.  Defendant

2   DEPUTY HALL was at all relevant times mentioned herein a Deputy Officer at Martinez

3   Detention Facility.  Defendant DEPUTY HALL had direct contact with Plaintiff

4   ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez

5   Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's

6   commitment.  Plaintiff ROBERTSON told DEPUTY HALL that he was entitled to less

7   restrictive conditions of confinement by nature of his civil commitment status; DEPUTY

8   HALL failed to take necessary steps to provide adequate accommodations.  Defendant

9   DEPUTY HALL is being sued in his individual and official capacities.

10          27.     Defendant DEPUTY FRANCIS, whose full name and identity are presently

11  unknown to Plaintiff and can be discerned only as "DEPUTY FRANCIS" from

12  interactions with Plaintiff ROBERTSON, is identified as DEPUTY FRANCIS until such

13  time that Plaintiff discovers his true identity and amends the instant complaint accordingly.

14  Defendant DEPUTY FRANCIS was at all relevant times mentioned herein a Deputy

15  Officer at Martinez Detention Facility.  Defendant DEPUTY FRANCIS had direct contact

16  with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at

17  Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff

18  ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY FRANCIS that he

19  was entitled to less restrictive conditions of confinement by nature of his civil commitment

20  status; DEPUTY FRANCIS failed to take necessary steps to provide adequate

21  accommodations.  Defendant DEPUTY FRANCIS is being sued in his individual and

22  official capacities.

23          28.     Defendant DEPUTY DUDLEY, whose full name and identity are presently

24  unknown to Plaintiff and can be discerned only as "DEPUTY DUDLEY" from interactions

25  with Plaintiff ROBERTSON, is identified as DEPUTY DUDLEY until such time that

26  Plaintiff discovers his true identity and amends the instant complaint accordingly.

27  Defendant DEPUTY DUDLEY was at all relevant times mentioned herein a Deputy

28  Officer at Martinez Detention Facility.  Defendant DEPUTY DUDLEY had direct contact

1  with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at

2  Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff

3  ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY DUDLEY that he

4  was entitled to less restrictive conditions of confinement by nature of his civil commitment

5  status; DEPUTY DUDLEY failed to take necessary steps to provide adequate

6  accommodations.  Defendant DEPUTY DUDLEY is being sued in his individual and

7  official capacities.

8       29.   Defendant DEPUTY SWIFT, whose full name and identity are presently

9  unknown to Plaintiff and can be discerned only as "DEPUTY SWIFT" from interactions

10  with Plaintiff ROBERTSON, is identified as DEPUTY SWIFT until such time that

11  Plaintiff discovers his true identity and amends the instant complaint accordingly.

12  Defendant DEPUTY SWIFT was at all relevant times mentioned herein a Deputy Officer

13  at Martinez Detention Facility.  Defendant DEPUTY SWIFT had direct contact with

14  Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at

15  Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff

16  ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY SWIFT that he was

17  entitled to less restrictive conditions of confinement by nature of his civil commitment

18  status; DEPUTY SWIFT failed to take necessary steps to provide adequate

19  accommodations.  Defendant DEPUTY SWIFT is being sued in his individual and official

20  capacities.

21       30.   Defendant DEPUTY MCMILLAN, whose full name and identity are

22  presently unknown to Plaintiff and can be discerned only as "DEPUTY MCMILLAN"

23  from interactions with Plaintiff ROBERTSON, is identified as DEPUTY MCMILLAN

24  until such time that Plaintiff discovers his true identity and amends the instant complaint

25  accordingly.  Defendant DEPUTY MCMILLAN was at all relevant times mentioned

26  herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY

27  MCMILLAN had direct contact with Plaintiff ROBERTSON over the course of Plaintiff

28  ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the

1 civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told

2 DEPUTY MCMILLAN that he was entitled to less restrictive conditions of confinement

3 by nature of his civil commitment status; DEPUTY MCMILLAN failed to take necessary

4 steps to provide adequate accommodations.  Defendant DEPUTY MCMILLAN is being

5 sued in his individual and official capacities.

6      31.    Defendant DEPUTY NELLER, whose full name and identity are presently

7 unknown to Plaintiff and can be discerned only as "DEPUTY NELLER" from interactions

8 with Plaintiff ROBERTSON, is identified as DEPUTY NELLER until such time that

9 Plaintiff discovers his true identity and amends the instant complaint accordingly.

10 Defendant DEPUTY NELLER was at all relevant times mentioned herein a Deputy

11 Officer at Martinez Detention Facility.  Defendant DEPUTY NELLER had direct contact

12 with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at

13 Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff

14 ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY NELLER that he

15 was entitled to less restrictive conditions of confinement by nature of his civil commitment

16 status; DEPUTY NELLER failed to take necessary steps to provide adequate

17 accommodations.  Defendant DEPUTY NELLER is being sued in his individual and

18 official capacities.

19      32.    Defendant DEPUTY SMITH, whose full name and identity are presently

20 unknown to Plaintiff and can be discerned only as "DEPUTY SMITH" from interactions

21 with Plaintiff ROBERTSON, is identified as DEPUTY SMITH until such time that

22 Plaintiff discovers his true identity and amends the instant complaint accordingly.

23 Defendant DEPUTY SMITH was at all relevant times mentioned herein a Deputy Officer

24 at Martinez Detention Facility.  Defendant DEPUTY SMITH had direct contact with

25 Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at

26 Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff

27 ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY SMITH that he was

28 entitled to less restrictive conditions of confinement by nature of his civil commitment

1  status; DEPUTY SMITH failed to take necessary steps to provide adequate

2  accommodations.  Defendant DEPUTY SMITH is being sued in his individual and official

3  capacities.

4        33.    Defendant DEPUTY FERNANDEZ, whose full name and identity are

5  presently unknown to Plaintiff and can be discerned only as "DEPUTY FERNANDEZ"

6  from interactions with Plaintiff ROBERTSON, is identified as DEPUTY FERNANDEZ

7  until such time that Plaintiff discovers his true identity and amends the instant complaint

8  accordingly.  Defendant DEPUTY FERNANDEZ was at all relevant times mentioned

9  herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY

10  FERNANDEZ had direct contact with Plaintiff ROBERTSON over the course of Plaintiff

11  ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the

12  civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told

13  DEPUTY FERNANDEZ that he was entitled to less restrictive conditions of confinement

14  by nature of his civil commitment status; DEPUTY FERNANDEZ failed to take necessary

15  steps to provide adequate accommodations.  Defendant DEPUTY FERNANDEZ is being

16  sued in his individual and official capacities.

17        34.    Defendant DEPUTY HUME, whose full name and identity are presently

18  unknown to Plaintiff and can be discerned only as "DEPUTY HUME" from interactions

19  with Plaintiff ROBERTSON, is identified as DEPUTY HUME until such time that

20  Plaintiff discovers his true identity and amends the instant complaint accordingly.

21  Defendant DEPUTY HUME was at all relevant times mentioned herein a Deputy Officer

22  at Martinez Detention Facility.  Defendant DEPUTY HUME had direct contact with

23  Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at

24  Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff

25  ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY HUME that he was

26  entitled to less restrictive conditions of confinement by nature of his civil commitment

27  status; DEPUTY HUME failed to take necessary steps to provide adequate

28  accommodations.  Defendant DEPUTY HUME is being sued in his individual and official

1 | capacities.

2 | 35. Defendant DEPUTY CAI, whose full name and identity are presently

3 | unknown to Plaintiff and can be discerned only as "DEPUTY CAI" from interactions with

4 | Plaintiff ROBERTSON, is identified as DEPUTY CAI until such time that Plaintiff

5 | discovers his true identity and amends the instant complaint accordingly. Defendant

6 | DEPUTY CAI was at all relevant times mentioned herein a Deputy Officer at Martinez

7 | Detention Facility. Defendant DEPUTY CAI had direct contact with Plaintiff

8 | ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez

9 | Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's

10 | commitment. Plaintiff ROBERTSON told DEPUTY CAI that he was entitled to less

11 | restrictive conditions of confinement by nature of his civil commitment status; DEPUTY

12 | CAI failed to take necessary steps to provide adequate accommodations. Defendant

13 | DEPUTY CAI is being sued in his individual and official capacities.

14 | 36. Defendant DEPUTY BROOK, whose full name and identity are presently

15 | unknown to Plaintiff and can be discerned only as "DEPUTY BROOK" from interactions

16 | with Plaintiff ROBERTSON, is identified as DEPUTY BROOK until such time that

17 | Plaintiff discovers his true identity and amends the instant complaint accordingly.

18 | Defendant DEPUTY BROOK was at all relevant times mentioned herein a Deputy Officer

19 | at Martinez Detention Facility. Defendant DEPUTY BROOK had direct contact with

20 | Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at

21 | Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff

22 | ROBERTSON's commitment. Plaintiff ROBERTSON told DEPUTY BROOK that he

23 | was entitled to less restrictive conditions of confinement by nature of his civil commitment

24 | status; DEPUTY BROOK failed to take necessary steps to provide adequate

25 | accommodations. Defendant DEPUTY BROOK is being sued in his individual and

26 | official capacities.

27 | 37. Defendant DEPUTY RIDEOUT, whose full name and identity are presently

28 | unknown to Plaintiff and can be discerned only as "DEPUTY RIDEOUT" from

interactions with Plaintiff ROBERTSON, is identified as DEPUTY RIDEOUT until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly. Defendant DEPUTY RIDEOUT was at all relevant times mentioned herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY RIDEOUT had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY RIDEOUT that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; DEPUTY RIDEOUT failed to take necessary steps to provide adequate accommodations.  Defendant DEPUTY RIDEOUT is being sued in his individual and official capacities.

38.     Defendant DEPUTY ROSAS, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "DEPUTY ROSAS" from interactions with Plaintiff ROBERTSON, is identified as DEPUTY ROSAS until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly. Defendant DEPUTY ROSAS was at all relevant times mentioned herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY ROSAS had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY ROSAS that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; DEPUTY ROSAS failed to take necessary steps to provide adequate accommodations.  Defendant DEPUTY ROSAS is being sued in his individual and official capacities.

39.     Defendant DEPUTY FOUI, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "DEPUTY FOUI" from interactions with Plaintiff ROBERTSON, is identified as DEPUTY FOUI until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly.  Defendant

DEPUTY FOUI was at all relevant times mentioned herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY FOUI had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY FOUI that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; DEPUTY FOUI failed to take necessary steps to provide adequate accommodations.  Defendant DEPUTY FOUI is being sued in his individual and official capacities.

40.     Defendant DEPUTY VAN SCOY, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "DEPUTY VAN SCOY" from interactions with Plaintiff ROBERTSON, is identified as DEPUTY VAN SCOY until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly. Defendant DEPUTY VAN SCOY was at all relevant times mentioned herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY VAN SCOY had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY VAN SCOY that he was entitled to less restrictive conditions of confinement by nature of his civil commitment status; DEPUTY VAN SCOY failed to take necessary steps to provide adequate accommodations.  Defendant DEPUTY VAN SCOY is being sued in his individual and official capacities.

41.     Defendant DEPUTY CUBIT, whose full name and identity are presently unknown to Plaintiff and can be discerned only as "DEPUTY CUBIT" from interactions with Plaintiff ROBERTSON, is identified as DEPUTY CUBIT until such time that Plaintiff discovers his true identity and amends the instant complaint accordingly. Defendant DEPUTY CUBIT was at all relevant times mentioned herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY CUBIT had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at

1  Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff

2  ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY CUBIT that he was

3  entitled to less restrictive conditions of confinement by nature of his civil commitment

4  status; DEPUTY CUBIT failed to take necessary steps to provide adequate

5  accommodations.  Defendant DEPUTY CUBIT is being sued in his individual and official

6  capacities.

7        42.    Defendant DEPUTY RODRIGUEZ, whose full name and identity are

8  presently unknown to Plaintiff and can be discerned only as "DEPUTY RODRIGUEZ"

9  from interactions with Plaintiff ROBERTSON, is identified as DEPUTY RODRIGUEZ

10  until such time that Plaintiff discovers his true identity and amends the instant complaint

11  accordingly.  Defendant DEPUTY RODRIGUEZ was at all relevant times mentioned

12  herein a Deputy Officer at Martinez Detention Facility.  Defendant DEPUTY

13  RODRIGUEZ had direct contact with Plaintiff ROBERTSON over the course of Plaintiff

14  ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the

15  civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told

16  DEPUTY RODRIGUEZ that he was entitled to less restrictive conditions of confinement

17  by nature of his civil commitment status; DEPUTY RODRIGUEZ failed to take necessary

18  steps to provide adequate accommodations.  Defendant DEPUTY RODRIGUEZ acted as a

19  final policymaker for COUNTY DEFENDANTS by rejecting and closing out Plaintiff

20  ROBERTSON's grievance regarding his improper housing placement.  Defendant

21  DEPUTY RODRIGUEZ is being sued in his individual and official capacities.

22        43.    Defendant DEPUTY VARADAY, whose full name and identity are

23  presently unknown to Plaintiff and can be discerned only as "DEPUTY VARADAY" from

24  interactions with Plaintiff ROBERTSON, is identified as DEPUTY VARADAY until such

25  time that Plaintiff discovers his true identity and amends the instant complaint accordingly.

26  Defendant DEPUTY VARADAY was at all relevant times mentioned herein a Deputy

27  Officer at Martinez Detention Facility.  Defendant DEPUTY VARADAY had direct

28  contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's

incarceration at Martinez Detention Facility, and had actual notice of the civil nature of

Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told DEPUTY

VARADAY that he was entitled to less restrictive conditions of confinement by nature of

his civil commitment status; DEPUTY VARADAY failed to take necessary steps to

provide adequate accommodations.  Defendant DEPUTY VARADAY is being sued in his

individual and official capacities.

44.     Defendant MICHAEL ELDER was at all relevant times mentioned herein an

employee of CCHS, working at Martinez Detention Facility.  Defendant MICHAEL

ELDER had direct contact with Plaintiff ROBERTSON over the course of Plaintiff

ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the

civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told

Defendant MICHAEL ELDER that he was committed under civil process as an insane

acquitee; MICHAEL ELDER failed to take necessary steps to provide adequate

accommodations and mental health care for Plaintiff's psychiatric disability.  Defendant

MICHAEL ELDER is being sued in his individual and official capacities.

45.     Defendant MELVORA JACKSON was at all relevant times mentioned

herein an employee of CCHS, working at Martinez Detention Facility.  Defendant

MELVORA JACKSON had direct contact with Plaintiff ROBERTSON over the course of

Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual

notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff

ROBERTSON told Defendant MELVORA JACKSON that he was committed under civil

process as an insane acquitee; MELVORA JACKSON failed to take necessary steps to

provide adequate accommodations and mental health care for Plaintiff's psychiatric

disability.  Defendant MELVORA JACKSON is being sued in her individual and official

capacities.

46.     Defendant CANDACE KUNZ TAO was at all relevant times mentioned

herein an employee of CCHS, working at Martinez Detention Facility as a Mental Health

Clinician.  Defendant CANDACE KUNZ TAO had direct contact with Plaintiff

1  ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez

2  Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's

3  commitment.  Plaintiff ROBERTSON told Defendant CANDACE KUNZ TAO that he

4  was committed under civil process as an insane acquitee; CANDACE KUNZ TAO failed

5  to take necessary steps to provide adequate accommodations and mental health care for

6  Plaintiff's psychiatric disability.  Defendant CANDACE KUNZ TAO is being sued in her

7  individual and official capacities.

8       47.     Defendant MARJORIE FRANK was at all relevant times mentioned herein

9  an employee of CCHS, working at Martinez Detention Facility as a Mental Health

10  Clinician.  Defendant MARJORIE FRANK HAD direct contact with Plaintiff

11  ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez

12  Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's

13  commitment.  Plaintiff ROBERTSON told Defendant MARJORIE FRANK that he was

14  committed under civil process as an insane acquitee; MARJORIE FRANK failed to take

15  necessary steps to provide adequate accommodations and mental health care for Plaintiff's

16  psychiatric disability.  Defendant MARJORIE FRANK is being sued in her individual and

17  official capacities.

18       48.     Defendant PATRICIA POSADA was at all relevant times mentioned herein

19  an employee of CCHS, working at Martinez Detention Facility as a Mental Health

20  Clinician.  Defendant PATRICIA POSADA had direct contact with Plaintiff

21  ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez

22  Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's

23  commitment.  Plaintiff ROBERTSON told Defendant PATRICIA POSADA that he was

24  committed under civil process as an insane acquitee; PATRICIA POSADA failed to take

25  necessary steps to provide adequate accommodations and mental health care for Plaintiff's

26  psychiatric disability.  Defendant PATRICIA POSADA is being sued in her individual and

27  official capacities.

28       49.     Defendant DAVID EZRA was at all relevant times mentioned herein an

employee of CCHS, working at Martinez Detention Facility as a Mental Health Clinician. Defendant DAVID EZRA had direct contact with Plaintiff ROBERTSON over the course of Plaintiff ROBERTSON's incarceration at Martinez Detention Facility, and had actual notice of the civil nature of Plaintiff ROBERTSON's commitment.  Plaintiff ROBERTSON told Defendant DAVID EZRA that he was committed under civil process as an insane acquitee; DAVID EZRA failed to take necessary steps to provide adequate accommodations and mental health care for Plaintiff's psychiatric disability.  Defendant DAVID EZRA is being sued in his individual and official capacities.

50.    Hereinafter, Defendants COUNTY OF CONTRA COSTA, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, and CONTRA COSTA HEALTH SERVICES are collectively referred to as "COUNTY DEFENDANTS."

51.    Hereinafter, Defendants DAVID O. LIVINGSTON, MICHAEL V. CASTENS, LIEUTENANT BROOKS, LIEUTENANT VANNOY, AND DEPUTY RODRIGUEZ are collectively referred to as "SUPERVISORY DEFENDANTS."

52.    Hereinafter, Defendants SHERIFF DAVID O. LIVINGSTON, UNDERSHERIFF MICHAEL V. CASTEN, LIEUTENANT BROOKS, LIEUTENANT VANNOY,  SERGEANT MARCHESE, SERGEANT BAILEY, DEPUTY MOSCHETTI, DEPUTY ENGELSTAD, DEPUTY CLAWSON, DEPUTY SPRINGER, DEPUTY GARCIA, DEPUTY DEMICHEL, DEPUTY EMORY, DEPUTY SIX, DEPUTY HALL, DEPUTY FRANCIS, DEPUTY DUDLEY, DEPUTY SWIFT, DEPUTY MCMILLAN, DEPUTY NELLER, DEPUTY SMITH, DEPUTY FERNANDEZ, DEPUTY HUME, DEPUTY CAI, DEPUTY BROOK, DEPUTY RIDEOUT, DEPUTY ROSAS, DEPUTY FOUI, DEPUTY VAN SCOY, DEPUTY CUBIT,  DEPUTY RODRIGUEZ, DEPUTY VARADAY are collectively referred to as "SHERIFF'S OFFICE EMPLOYEE DEFENDANTS."

53.    Hereinafter, Defendants MICHAEL ELDER, MELVORA JACKSON, CANDACE KUNZ TAO, MARJORIE FRANK, PATRICIA POSADA, and DAVID EZRA are collectively referred to as "CCHS EMPLOYEE DEFENDANTS."

54.     Plaintiff ROBERTSON is ignorant of the true names and capacities of Defendants sued in this complaint as DOES 1 through 20, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiff ROBERTSON asserts that DOES 1 through 20 are individuals employed by either the SHERIFF'S OFFICE or CCHS, and that these individuals were aware of Plaintiff ROBERTSON's civil commitment and psychiatric disability, yet failed to provide him with appropriate conditions of confinement, accommodations, and/or mental health care.  Plaintiff ROBERTSON will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff ROBERTSON is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this complaint.

55.     At all times mentioned in this complaint, each Defendant was the agent, employee, servant, joint venture, partner, and/or co-conspirator of the other Defendants named in this complaint, was acting within the course and scope of this agency, and all acts alleged to have been committed by any one of them was committed on behalf of every other Defendant.

## FACTUAL ALLEGATIONS

**I.      THE MARTINEZ DETENTION FACILITY IS THE MOST PUNITIVE OF THE COUNTY'S SEVERAL JAIL DETENTION FACILITIES**

56.     Defendant CONTRA COSTA COUNTY OFFICE OF THE SHERIFF operates three jail detention facilities within the Office's Custody Services Bureau:  the West County Detention Facility, the Marsh Creek Detention Facility, and the Martinez Detention Facility.  The SHERIFF'S OFFICE also operates a Custody Alternative Facility ("CAF"), which provides outside programs designed for people sentenced to the custody of the Sheriff who serve their time working on public projects in lieu of incarceration.

57.     According to the 2015 Jail Needs Assessment, Contra Costa County Office of the Sheriff ("the 2015 Assessment"), the West County Detention Facility ("WCDF") "is the newest of the detention facilities in Contra Costa County," and is "designed to operate

[2931239-11]

as a coeducational, program-oriented facility." The WCDF "is a campus model that allows for, and indeed encourages, movement of residents between housing and program clusters within a garden-like campus setting. The WCDF is often described as, and in fact looks more like, a college campus rather than a jail facility." "The WCDF was built to house those sentenced residents who do not qualify for the County's other sentenced facilities, as well as 'special needs' populations." The WCDF "also provides resident housing for pre-trial detainees." WCDF residents "have the ability to leave the housing units for classes, doctors' appointments or scheduled visits."

58. The 2015 Assessment describes the Marsh Creek Detention Facility ("MCDF") as "a minimum security corrections facility used for the confinement of low-risk sentenced males." The MCDF "is frequently referred to as the 'Farm' because of its rural location and low security environment. It functions, in essence, as an honor farm." Bedding is provided in a dorm environment that promotes socialization. "The underused capacity in this very low security jail facility reflects the fact that many individuals who once occupied these beds are now serving their time in alternative sentencing programs." "The MCDF provides a variety of opportunities for residents to stay occupied in productive educational, vocational and other activities and learn useful skills that can be applied once they are released from custody."

59. The Official Website of the Martinez Detention Facility ("MDF") acknowledges its inappropriateness for housing civil detainees, indicating that it "was built to house pre-sentenced and sentenced inmates who do not qualify for less restrictive environments." The 2015 Assessment indicates that "all people incarcerated at MDF live in the most restrictive conditions of the entire County jail system." The conditions of confinement at MDF are "compacted, under-designed, overly restrictive, populated by the highest-need individuals whose mental health conditions are exacerbated by deleterious living conditions, nearly devoid of appropriate services, with population levels inconsistent with direct supervision design pose serious and constant risks to the safe, secure, humane, and effective operations at MDF."

60.     The 2015 Assessment continues:  "[P]eople incarcerated at MDF have almost no access to services, programs, treatment, recreation, socialization, or physical activity."  The design of MDF is "intended to minimize movement of residents within its confines."  "MDF is almost totally devoid of program and treatment spaces."  "Aside from the dayroom, there are no other group-meeting spaces at MDF."  All telephone calls, even those made by civil detainees, are monitored and may be recorded.  The 2015 Assessment concluded in bold font that "**MDF is not suitable for longer-term sentences that have become the norm in California's current criminal justice environment**."

61.     There are no therapeutic programs at the Martinez Detention Facility for inmates who suffer from mental illness, such as individual or group therapy.  As acknowledged in its 2015 application for funding from the Board of State and Community Corrections, "[p]sychiatric services [at MDF] are limited to assessment, diagnosis, supervision, and medication management."

62.     Overcrowding at MDF has created a "dire" situation according to the 2015 Assessment.  "The resultant needs for crowd management and unit control have taken precedence over meaningful human interaction and the need for critical programming and counseling, etc."  "The result is a stressful and dangerous atmosphere for both staff and residents."

63.     Inmates' out of cell time is severely restricted in administrative segregation units within MDF.  Out of cell time is the only time that an inmate has an opportunity to make legal and/or personal phone calls, exercise and breath fresh air (if the courtyard is available, which is not always the case), shower, shave, obtain medical request or other jail forms that the inmate may need, sweep and mop the inmate's cell (if cleaning supplies are available, which is not always the case), prepare food in a microwave (if available, which is not the case in the D Module), and engage in socialization with other inmates.

64.     On information and belief, it is COUNTY DEFENDANTS' official policy and/or longstanding practice to house civil detainees at MDF.

II.    **THE ADMINISTRATIVE SEGREGATION UNITS AT MARTINEZ DETENTION FACILITY ARE THE MOST PUNITIVE HOUSING PLACEMENTS IN JAIL**

65.    MDF's housing options for inmates placed in administrative segregation include the D Module, the M Module, and the Q Module.

66.    The D Module at MDF is an administrative segregation unit; it is a restrictive, punitive environment designed to limit movement.  All cells have single beds, and are equipped with microphones that can be used at any time and without notice by jail staff to monitor inmate communications.  Doors operate only by computer.  Toilets are controlled by timers.  Harsh fluorescent lights shine on inmate bunks 24 hours per day, disorienting inmates and making sleep difficult.  There are no reflective mirrors to facilitate the adequate maintenance of one's appearance.  One single, solitary hour of out-of-cell time every other day is afforded to inmates in the D Module.  While the A and B Sections of D Module have their own yards that are accessible during out-of-cell time, Section C lacks a yard and its residents can access a yard only on the weekend, through reservation, and at most only once per week.

67.    Administrative segregation in the M Module at MDF is also inappropriate for civil detainees.  M Module is primarily a behavioral custody unit.  Unlike other units, the M Module affords no caffeinated beverages to its inmates during their out-of-cell time, and none is available through canteen purchase.  Male inmates in the M Module are housed in general population and administrative segregation cells.  Female inmates also reside in M Module, in general population and administrative segregation cells separate from those of the male inmates.  In addition to the benefits of socialization, inmates in M Module's general population are afforded three hours of out-of-cell time six days per week.  In contrast, civil detainees are permitted to spend only one hour out of their cells six days per week.  Inmates held in M Module's administrative segregation cells are allowed the least amount of out-of-cell time in the M Module:  only one hour of out-of-cell time on Mondays, Wednesdays, and Saturdays.

68.    The Q Module at MDF is used as an administrative segregation unit that, at

times, receives overflow from Module D.  Inmates placed in administrative segregation in the Q Module are often housed at the end corner of a row of cells, known by inmates and guards alike as "the dungeon" because of its deprivation of light and isolation from socialization with other inmates.  The doors to cells in "the dungeon" have narrow "slices" of windows, which afford little ability to communicate with others.  Combined with the remoteness of the cells' location, inmates in the "dungeon" experience a higher degree of isolation than other inmates in the Q Module.  As opposed to other cells in the Q Module that have a view of the communal television set, the cells in the "the dungeon" have severely limited views, if at all, of the television.  Ad-seg inmates in the Q Module are allowed out of their cells one hour per day, every other day.

## III.   DEFENDANTS HELD PLAINTIFF IN PUNITIVE CONDITIONS IN ADMINISTRATIVE SEGREGATION UNITS FOR NEARLY THREE YEARS

69.      Pursuant to Welfare and Institutions Code section 7301, Plaintiff ROBERTSON was transferred from Napa State Hospital to California State Prison-Sacramento ("CSP-SAC") on September 22, 2011.  On February 29, 2012, Plaintiff ROBERTSON filed a petition for writ of habeas corpus from CSP-SAC, in which he requested the restoration of his sanity under California Penal Code section 1026.2.  On April 17, 2012, the Superior Court of the State of California, County of Contra Costa ("Superior Court") set a hearing on Plaintiff ROBERTSON's petition for May 23, 2012, which was subsequently continued.  The Superior Court also ordered the Public Defender's Office to prepare a removal order for Plaintiff ROBERTSON to be transported to Superior Court form CSP-SAC; that removal order was filed on or about June 1, 2012.

70.      Plaintiff ROBERTSON was transported to MDF on June 11, 2012 pursuant to the removal order related to his pending petition.  Upon arrival at MDF, Plaintiff ROBERTSON informed Defendant DEPUTY MOSCHETTI and two other DOE Defendants of his status as a civil detainee.  Plaintiff ROBERTSON further told Defendant DEPUTY MOSCHETTI and two other DOE Defendants that he was previously held at Napa State Hospital and CSP-SAC under civil commitment, having been found not guilty

by reason of insanity in 1996.  At the time of his booking, a Sheriff's Office employee whose name is currently unknown to Plaintiff but who is sued here as a DOE subjected Plaintiff ROBERTSON to booking procedures consistent with that of a sentenced inmate or pre-trial detainee:  a full strip search in which he was forced to remove all clothing, lift his penis and testicles for inspection, run his fingers through his hair, open his mouth for inspection, and bend over, spread his buttocks apart with his hands, and cough.  During his mental health intake on June 11, 2012, Plaintiff ROBERTSON told Defendant CCHS employee MICHAEL ELDER that he had a history of being at Napa, Atascadero, and Patton State Hospitals and that he was at MDF for a restoration of sanity hearing.

71.     A Sheriff's Office employee whose name is currently unknown to Plaintiff but who is sued here as a DOE initially placed Plaintiff ROBERTSON in intake cell 9, a general population cell.  Intake cell 9 is comparable to a day room; it has a television, a telephone, a private bathroom, and the ability to walk around.  After approximately four hours in intake cell 9, Defendant DEPUTY MOSCHETTI told Plaintiff ROBERTSON that he would be transferred to administrative segregation.  Plaintiff ROBERTSON asked why he would be placed in administrative segregation, and Defendant DEPUTY MOSCHETTI responded that the decision was made by classification.  Thereafter, a Sheriff's Office employee whose name is currently unknown to Plaintiff but who is sued here as a DOE transferred Plaintiff ROBERTSON from intake cell 9 to intake cell 7, an administrative segregation cell.  In contrast to the general population intake cell 9, intake cell 7 is a small cell suitable for only one person, and has no television or telephone.  Unlike the privacy afforded to detainees in intake cell 9 who require the bathroom, the toilet in intake cell 7 is exposed to detainees and guards that pass by.  Plaintiff ROBERTSON spent approximately 24 hours in intake cell 7.  A Sheriff's Office employee whose name is currently unknown to Plaintiff but who is sued here as a DOE then transferred Plaintiff ROBERTSON to an administrative segregation cell in the Q Module for approximately 36 hours.  A Sheriff's Office employee whose name is currently unknown to Plaintiff but who is sued here as a DOE thereafter transferred Plaintiff ROBERTSON to permanent housing in administrative

1   segregation in the D Module.

2        72.    Despite his status as civil detainee, Defendants subjected Plaintiff

3   ROBERTSON to confinement in punitive administrative segregation units at MDF for

4   nearly three years, until May 21, 2015.  Throughout the duration of his incarceration and to

5   no avail, Plaintiff ROBERTSON told dozens of his jailors that he was a civil detainee, that

6   he was inappropriately housed, and that he should be placed in an appropriate facility

7   rather than in MDF's administrative segregation units, including but not limited to:

8   Defendants DEPUTY MOSCHETTI, DEPUTY ENGELSTAD, DEPUTY CLAWSON,

9   DEPUTY SPRINGER, DEPUTY J. GARCIA, DEPUTY DEMICHEL, DEPUTY

10  EMORY, DEPUTY SIX, DEPUTY HALL, DEPUTY FRANCIS, DEPUTY DUDLEY,

11  DEPUTY SWIFT, DEPUTY MCMILLAN, DEPUTY NELLER, DEPUTY SMITH,

12  DEPUTY FERNANDEZ, DEPUTY HUME, DEPUTY CAI, DEPUTY BROOK,

13  DEPUTY RIDEOUT, DEPUTY ROSAS, DEPUTY FOUI, DEPUTY VAN SCOY,

14  DEPUTY CUBIT;  DEPUTY RODRIGUEZ, VARADAY, SERGEANT MARCHESE,

15  SERGEANT BAILEY, LIEUTENANT BROOKS, LIEUTENANT VANNOY, AND

16  CCHS EMPLOYEES MICHAEL ELDER, MELVORA JACKSON, CANDACE KUNZ,

17  MARJORIE FRANK, PATRICIA POSADA, AND DAVID EZRA.

18       73.    Plaintiff ROBERTSON also filed numerous written grievances indicating his

19  civil status and right to less restrictive conditions of confinement.  For example, on June

20  30, 2013, Plaintiff ROBERTSON filed a grievance stating:  "Since I have been acquitted

21  by reason of insanity and currently being housed in the county jail I am therefore deemed a

22  'civil detainee.'  In *Jones v. Blanas* the 9th Circuit decided that it is unlawful to have civil

23  detainees in conditions equal to pretrial detainees…."  A person whose name is currently

24  unknown to Plaintiff but who is sued here as a DOE responded to the grievance with an

25  unsigned answer which erroneously stated that:  "You have <u>open</u> criminal charge[s]"

26  (emphasis in the original).  On July 9, 2013, Plaintiff ROBERTSON filed an appeal,

27  stating that:  "(1) I have 0 [zero] open criminal charges.  I was acquitted by reason of

28  insanity pursuant to Penal Code 1026 on 2/22/96…."  A person whose name is currently

unknown to Plaintiff but who is sued here as a DOE answered his appeal stating only: "all noted, and thank you." On or about September 1, 2013, Plaintiff ROBERTSON informed Defendant DEPUTY ENGELSTAD that he was a civil detainee and should not be in the hole. Defendant DEPUTY ENGELSTAD responded that he had criminal charges and was properly housed. To no avail, Plaintiff ROBERTSON disagreed, and explained that he was found not guilty by reason of insanity. Plaintiff ROBERTSON had no greater luck with mental health staff, whose names are currently unknown to Plaintiff but who are sued here as DOEs. In conversations with more than one of these DOE Defendants, mental health staff repeatedly dismissed his concerns as with comical responses such as "Oh, now you're talking legal."

74. Months later, still suffering punitive conditions of confinement, Plaintiff ROBERTSON submitted another written grievance on October 28, 2013, addressed to "Lieutenant D Module Vannoy," stating: "As a civil detainee I am constitutionally entitled to 'more considerate' treatment while being housed in the county jail awaiting court proceedings. *Jones v. Blanas* 393 F.3d 918 (Sacramento County)…. But as you know on D Module we only have 1 hour every other day of time out of our cells for exercise, shower, phone calls, shaving, etc… So if you could allow me to come out more than that until I return to the state hospital or am released; you know like an hour a day instead of every other day then then problem would be solved. Thank you for your time, effort, and consideration." The response to his grievance, drafted by a person whose name is currently unknown to Plaintiff but who is sued here as a DOE, states in part that "[t]his is a custody issue and beyond Mental Health staff's contract."

75. Other examples of written grievances establish Defendants' awareness of Plaintiff ROBERTSON's civil status. For example, in response to Plaintiff ROBERTSON's November 19, 2013 written grievance stating, among other things, that "Penal Code 1026.2 and *In Re Lee* 78 Cal. App. 3d 753 require the rights and privileges to be made available to an insane acquittee that is housed in the county jail awaiting 1026.2 proceedings….", the answer drafted by a person whose name is currently unknown to

Plaintiff but who is sued here as a DOE indicates "We are aware of your situation."  Still, two months later, no accommodations had been made.  On January 12, 2014, Plaintiff ROBERTSON submitted a grievance pleading:  "[C]an you please house me in civil detention pending the hearing?"  Defendant DEPUTY RODRIGUEZ's denial to his grievance states:  "REJECTED.  PER POLICY YOUR GRIEVANCES ON THIS MATTER IS CLOSED. 'HOUSED ACCORDINGLY.'" (Emphasis in the original.)  This ultimate decision on Plaintiff ROBERTSON's classification and conditions of confinement was asserted by a final policymaker for Defendants.  Despite his protests, every single housing placement provided to Plaintiff ROBERTSON over the duration of his nearly three-year confinement at MDF was more punitive than those in experienced by sentenced inmates in MDF's general population.

76.    Plaintiff ROBERTSON was held in administrative segregation in D Module for approximately 30 months, from approximately June 11, 2012 until December 7, 2014.  As discussed in Paragraph 66, *supra*, administrative segregation in D Module is substantially more restrictive than general population.  During this time, Plaintiff ROBERTSON received only one-third the amount of out-of-cell time allowed to inmates in general population.  Even this "free" time was more curtailed, as the D Module was more restrictive than other units.  Because Plaintiff ROBERTSON was held in Section C of D Module for a substantial portion of this time, his outside yard time was comparatively less than even that received by the other inmates held in D Module.  Plaintiff ROBERTSON was subjected to 24-hour lighting for the duration of this period, and used a torn piece of sheet to cover his eyes at night.  The sheet frequently proved futile against the harsh light, in part because it would not stay on his face when he turned or rolled over.  As a result, Plaintiff ROBERTSON suffered poor sleep in D Module, which aggravated his mental illness.  Jail staff, including Defendant DEPUTY ENGELSTAD and other staff whose names are currently unknown to Plaintiff but who are sued here as DOEs, routinely monitored the audio in Plaintiff ROBERTSON's cell without notice; at times his conversation with a neighbor would be interrupted by a voice through his cell speaker,

1   commenting on their conversation.

2   77.   Defendants failed to reasonably protect Plaintiff ROBERTSON from harm

3   while confined in D Module.  During part of this time, SUPERVISORY DEFENDANTS

4   made Plaintiff ROBERSTON a trustee, and tasked him with serving food to inmates in D

5   Module.  On information and belief, COUNTY and SUPERVISORY DEFENDANTS

6   maintain a policy that only custody officers serve food to inmates held in Section C of D

7   Module, given the dangerousness of those inmates.  Nevertheless, SUPERVISORY

8   DEFENDANTS tasked Plaintiff ROBERTSON with serving food to inmates in Section C

9   of D Module.  On approximately February 18, 2013, while performing trustee duties, an

10  inmate in Section C assaulted Plaintiff ROBERTSON with a broom handle covered in

11  feces.  On December 4, 2014, a different inmate in Section C threw urine on Plaintiff

12  ROBERTSON while he was delivering food to Mr. Carter's cell.  The next day, on

13  December 5, 2014, Plaintiff ROBERTSON was similarly assaulted by a third inmate in

14  Seciton C, who threw urine on him while he was performing trustee duties.  As a result of

15  these attacks, Defendants moved Plaintiff ROBERTSON to the M Module.  At the time,

16  Plaintiff ROBERTSON asked Defendant DEPUTY CUBIT that he receive less restrictive

17  conditions of confinement given his civil status.  Defendant DEPUTY CUBIT responded

18  that Plaintiff ROBERTSON would be placed in administrative segregation within the M

19  Module.

20  78.   Defendants held Plaintiff ROBERTSON in administrative segregation in the

21  M Module from approximately December 7, 2014 through May 21, 2015, except for an

22  approximately ten-day period he spent in Q Module.  As discussed in Paragraph 67, *supra*,

23  administrative segregation in M Module is more restrictive than general population, and

24  during this time, Plaintiff ROBERTSON received far less outside time than pre-trial

25  detainees and sentenced inmates housed in general population.

26  79.   On approximately March 1, 2015, custodial staff attempted to move Plaintiff

27  ROBERTSON back to D Module.  In furtherance of the move, Plaintiff ROBERTSON

28  met with a classification officer whose name is currently unknown to Plaintiff but who is

1  sued here as a DOE.  During this meeting, Plaintiff ROBERTSON told the DOE

2  Defendant classification officer that the D Module is inappropriate because he is a civil

3  detainee.  The DOE Defendant classification officer disagreed with Plaintiff

4  ROBERTSON, and erroneously told Plaintiff ROBERTSON that he was incarcerated on

5  open criminal charges.  As a result of this exchange, the DOE Defendant classification

6  officer eventually acknowledged that Plaintiff ROBERTSON did not have open criminal

7  charges and was indeed a civil detainee.  Nevertheless, jail custody staff whose names are

8  currently unknown to Plaintiff but who are sued here as DOEs transferred Plaintiff

9  ROBERTSON to an administrative segregation cell in the Q Module, commonly referred

10  to as "the dungeon" for reasons discussed in paragraph 68 above.  The conditions in "the

11  dungeon" in the Q Module, where Plaintiff ROBERTSON was held from approximately

12  March 2, 2015 through March 11, 2015, were isolating and more restrictive than those

13  experienced by sentenced inmates in general population.

14       80.     Following his placement in administrative segregation in Q Module, Plaintiff

15  ROBERTSON was transferred back to M Module on March 11, 2015, where he was held

16  until May 21, 2015.  Although he was officially classified by Defendants as a civil

17  detainee after approximately March 11, 2015, and classified as not suitable for the

18  administrative segregation cells in M Module, Plaintiff ROBERTSON was subjected to

19  more restrictions than sentenced inmates in the general population units within Module M

20  and elsewhere at MDF.  During this period, Plaintiff ROBERTSON was housed in Cell 4,

21  a filthy and punitive physical space in an administrative segregation section of the M

22  Module.  As opposed to other general population cells in M Module, this cell lacked a

23  reflective surface to allow for self-respect and daily maintenance.  Cell 4 was filthy, with

24  dried phlegm or mucus substances on the walls and a substantial portion of the floor tiles

25  missing.  During the entirety of his incarceration in Cell 4, employees of COUNTY

26  DEFENDANTS whose names are currently unknown to Plaintiff but who are sued here as

27  DOEs covered the only window to Plaintiff ROBERTSON's cell with a plastic bag to

28  prohibit his visual observation or other communication with anyone else in the jail.

1   Additionally, Cell 4 is positioned directly in front of a custodial deputy's station, and the

2   acting deputies, whose names are currently unknown to Plaintiff but who are sued here as

3   DOEs, regularly ensured that the bag remained on the window and actively prevented

4   inmates from communicating with Plaintiff ROBERTSON.  As opposed to the sentenced

5   inmates in M Module's general population who received three hours of out-of-cell time six

6   days per week, Plaintiff ROBERTSON was permitted to spend only one hour out of his

7   cell six days per week while incarcerated in Cell 4.

8          81.    At no time during the nearly three years of his confinement at MDF did

9   Defendants provide Plaintiff ROBERTSON with conditions less restrictive than sentenced

10  inmates in general population.  Plaintiff ROBERTSON was not provided access to leisure

11  time activity groups that were offered to other inmates in general population, including

12  activities that promote educational, social, cultural and/or recreational interests of

13  participating inmates.  Indeed, for any particular program or privilege, Plaintiff

14  ROBERTSON received more restricted options or, at best, equal options as pre-trial

15  detainees and/or sentenced inmates.  For example, he was subjected to the same visitation

16  limitations as pre-trial and convicted detainees:  a maximum of two visits for a total of one

17  hour per week, all of which were facilitated as "non-contact" visits through safety glass.

18  His phone calls were subject to monitoring and recording, just like criminally detained

19  inmates.  There is no law library at MDF, and like all inmates at MDF, Plaintiff

20  ROBERTSON was limited to receiving copies of up to five statutes or case law decisions

21  per month.  After custodial staff whose names are currently unknown to Plaintiff but who

22  are sued here as DOEs informed Plaintiff ROBERTSON of their understanding that he was

23  a civil detainee on approximately March 1, 2015, Plaintiff ROBERTSON received further

24  restrictions on his ability to access legal materials in that the copies of five cases he

25  requested as part of his monthly allowance were delivered to him with only the first page

26  copied and the remaining pages were missing.

27

28

**IV.  DEFENDANTS FAILED TO ACCOMMODATE PLAINTIFF ROBERTSON'S MENTAL ILLNESS AND FAILED TO PROVIDE ADEQUATE MENTAL HEALTH CARE**

82.     Plaintiff ROBERTSON has a psychiatric disability.  Throughout the duration of his confinement at MDF, Defendants failed to provide Plaintiff ROBERTSON with adequate mental health care and reasonable disability accommodations for his mental illness.  Defendants failed to provide him with individual and/or group therapy, despite his multiple requests to staff whose names are currently unknown to Plaintiff but who are sued here as DOEs.  Defendants also repeatedly denied Plaintiff ROBERTSON medication for psychiatric problems for which he complained to staff whose names are currently unknown to Plaintiff but who are sued here as DOEs, and for which he received prescribed medication prior to his incarceration at the Martinez Detention Facility.  On numerous occasions, Plaintiff ROBERTSON specifically asked CCHS employees including Defendants  DAVID EZRA, PATRICIA POSADA, MELVORA JACKSON and other employees whose names are currently unknown to Plaintiff but who are sued here as DOEs for treatment including medication for his dysthymia, depression, and/or anxiety, and was never provided treatment or medication.  Defendants discriminated against Plaintiff ROBERTSON because of the nature of his psychiatric disability and civil commitment; other inmates incarcerated at MDF received programming, treatment services, and medication that Plaintiff ROBERTSON was excluded from because of his disability.

83.     Plaintiff ROBERTSON's mental health and psychiatric functioning significantly deteriorated as a result of the punitive nature of his conditions of confinement, and was magnified by Defendants' failure to provide him with adequate mental health care.  Plaintiff ROBERTSON's repeated pleas for mental health treatment fell on deaf ears.  For example, Plaintiff ROBERTSON submitted a medical request on June 25, 2013 asking the jail psychiatrist to "[p]lease come speak with me about prescribing me some psych meds.  I have a long history of depression…. It'[s] as bad as it can get.  My situation is not an emergency but it is an urgent one so please come A.S.A.P." Defendant CCHS employee DAVID EZRA, a Marriage and Family Therapist, responded

[2931239-11]

to the medical request on June 28, 2013 stating "seen[;] no indication for meds at this time[.] [T]ry behavioral techniques." Plaintiff ROBERTSON filed a grievance on June 28, 2013 stating that "David from mental health has refused to refer me for medications. As an insane acquittee (Penal Code 1026) I have the right to receive treatment for a diagnosed mental disorder. I have a long history—going back to 1996—of depression. I have been diagnosed with dysthymia by several doctors. I have offered to prove of my status as an insane acquittee (O.T.C.) and also of my diagnosis of depressions but David got upset and refused to listen." Defendant DAVID EZRA filed a progress note the same day acknowledging that Plaintiff ROBERTSON said "I have dysthymia" and "I want to get back on antidepressants….". In his progress note, Defendant DAVID EZRA further acknowledged that Plaintiff ROBERTSON "clearly stated that he is now filing for restoration of sanity after being granted an NGI." Yet Defendant DAVID EZRA concluded that there was "[n]o evidence of any major merntal [SIC] disorder…. No indication for medication referral."

84.     Two days later, on June 30, 2013, Plaintiff ROBERTSON filed a grievance stating: "…. Also as an insane acquittee I am entitled to Patient Rights. I do not wish to cause trouble with courts or lawsuits. I've only asked for antidepressant medication that has been prescribed to me for over 10 years. My depression is well documented by Napa State Hospital, Patten State Hospital, and Atascadero, as well as San Quentin State Prison and CSP Sacramento etc… My experience tells me that **my depression is worse than ever**…." (Emphasis added). A person whose name is currently unknown to Plaintiff but who is sued here as a DOE responded with a written answer to his grievance, which erroneously stated that Plaintiff ROBERTSON had open criminal charges and also queried whether Plaintiff ROBERTSON knew "if Dr. Korpi (court appointed) concluded that you were in need of services? Maybe we should consult." Plaintiff ROBERTSON was and is unaware of any such consultation Defendants made with Dr. Korpi. On July 9, 2013, Plaintiff ROBERTSON filed an appeal reiterating his status as a civilly-committed detainee and stating that: "I have never spoken to any Dr. Korpi. I signed a release for

**FIRST AMENDED COMPLAINT**
[2931239-11]

you to review my medical records for 2011 & 2012.  Take note of my extensive history of depression, anxiety and insomnia.  Also take note that I am currently still legally insane according to Penal Code 1026 and allow me to exercise my patients' right to treatment."  A person whose name is currently unknown to Plaintiff but who is sued here as a DOE responded with a written answer that tersely said "all noted, thank you."  Upon information and belief, Defendants never provided Plaintiff ROBERTSON with access to a Patients' Rights Advocate.

85.     Plaintiff ROBERTSON's mental health deteriorated during his time in the punitive administrative segregation units at MDF.  He lost hope, and felt that he would never be able to leave the punitive and restrictive environment in which he was incarcerated.  He increasingly experienced symptoms of anxiety, and could not sleep due to insomnia.  Plaintiff ROBERTSON continued to seek treatment for his mental health issues, including by obtaining less restrictive housing, to no avail.  He repeatedly informed Defendants of his NGI civil status.  Progress notes from Defendant CCHS employees CANDACE KUNZ TAO and MARJORIE FRANK, dated September 15, 2013 and September 30, 2013, acknowledge that Plaintiff ROBERTSON is "NGI."  Defendant CCHS employee PATRICIA POSADA's November 1, 2013 progress note indicates that Plaintiff ROBERTSON "presents upset and irritable with dysthymia.  He spoke at length about the legitimacy of his treatment while incarcerated."  Plaintiff ROBERTSON's November 19, 2013 written grievance again pleads for proper treatment and medication: "I am an insane acquitee here in MDF awaiting civil process…. I have a right to receive treatment for a diagnosed mental disorder.  It is well documented that I suffer from depression but your doctors are refusing to even discuss prescribing antidepressant medication.  This is a violation of my patients' rights.  Why are you doing this to me?"  A March 12, 2014 progress note signed by Defendant CCHS employee MELVORA JACKSON stated that a deputy whose name is currently unknown to Plaintiff but who is sued here as a DOE reviewed Plaintiff ROBERTSON's file "to discover that Mr. Roberts is a candidate for psychiatric placement.  Charges ae [SIC] for NGI."  Nevertheless,

[2931239-11]

adequate psychiatric medication and placement in a treatment program were withheld from Plaintiff ROBERTSON, who continued to decompensate and suffer harm while housed in administrative segregation — conditions that are far more punitive than those experienced by his criminally-detained counterparts in general population.  Defendants knew of Plaintiff ROBERTSON's psychiatric disability and failed to provide him with medication and treatment because of his psychiatric disability.  In contrast, other inmates without the same psychiatric disability received greater access to programming and/or appropriate medication for their mental illness.

## V.    DEFENDANTS' LONGSTANDING POLICIES, PRACTICES, ACTIONS, AND OMISSIONS ARE PUNITIVE AND FAIL TO ACCOMMODATE CIVIL DETAINEES

86.    At all times mentioned herein, the Defendants, and each of them, acted under color of state law.

87.    Upon information and belief, COUNTY DEFENDANTS' custom and long-standing practice is to confine civil detainees in conditions of confinement as or more restrictive than the conditions for pre-trial detainees and sentenced prisoners. SUPERVISORY DEFENDANTS are aware of these practices, and have condoned and/or ratified such practices.

88.    Upon information and belief, COUNTY DEFENDANTS' custom and long-standing practice is to provide inadequate accommodation and mental health services to civil detainees.  SUPERVISORY DEFENDANTS are aware of these practices, and have condoned and/or ratified such practices.

89.    Defendants have known that civil detainees, including those with psychiatric disabilities, are not afforded more considerate conditions of confinement, adequate mental health care, and/or adequate accommodations at MDF, including through Plaintiff ROBERTSON's verbal statements, written grievances, and the 2015 Jail Needs Assessments.  The conditions in which Plaintiff ROBERTSON was confined at MDF were deliberately intended to punish and/or were excessive in relation to any non-punitive purpose.  Defendants' actions and omissions in response to Plaintiff ROBERTSON's

requests for less restrictive conditions and adequate mental health care and accommodation demonstrate their discrimination as to psychiatrically disabled individuals.  Plaintiff ROBERTSON was housed in punitive administrative segregation conditions of confinement because of his psychiatric disability; whereas inmates without such disabilities are housed in less restrictive conditions of confinement.  SUPERVISORY DEFENDANTS were aware of Plaintiff ROBERTSON's housing in punitive conditions of confinement, condoned and ratified such placement, and in so doing, were malicious, intentional, and/or recklessly or callously indifferent to Plaintiff ROBERTSON's protected rights, including his right to due process and his right to be free of cruel and unusual punishment.

90.     Plaintiff ROBERTSON will continue to seek to have his sanity restored.  A petition for the restoration of sanity filed by Plaintiff ROBERTSON will be heard by the Contra Costa County Superior Court.  Accordingly, there is a realistic probability that Plaintiff ROBERTSON will be subjected to Defendants' unlawful acts, omissions, policies, and practices discussed herein because he is likely to be returned to MDF in connection with further proceedings related to his pursuit of the restoration of his sanity.

91.     Defendants' failure to ascertain and/or confirm Plaintiff ROBERTSON's civilian status after he notified Defendants arbitrarily deprived Plaintiff ROBERTSON of due process.

92.     Defendants' placement of any individual, including Plaintiff ROBERTSON, in administrative segregation conditions of confinement continuously for nearly three years constitutes an inhumane practice.  Plaintiff ROBERTSON decompensated and his mental health problems were exacerbated as a result of his solitary confinement.  These practices implicate every cause of action identified herein; specifically, Defendants' continuous use of administrative segregation for over 30 months violates:  (1) the Eighth and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983; (2) Article I, Sections 7 and 17 of the California Constitution; (3) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; (4) Section 504 of the Rehabilitation Act, 29 U.S.C.

§ 794 ("Rehabilitation Act"); (5) California Government Code §§ 11135, *et seq.*; and (6) California Civil Code § 52.1. .

93.     COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS failed to adequately monitor, audit, and review classification decisions related to their use of administrative segregation in order to ensure that inmates spend the minimal amount of time necessary in administrative segregation to achieve Defendants' legitimate penological and/or security goals.  Upon information and belief, COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS lack any policy or practice for regularly reviewing or auditing classification decisions in order to identify systemic problems regarding the manner in which Defendants keep civil detainees in conditions of confinement as or more restrictive than sentenced inmates.  Upon information and belief, COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS lack any policy or practice for regularly reviewing or auditing classification decisions in order to identify systemic problems regarding the manner in which Defendants keep mentally ill and/or psychiatrically disabled detainees in conditions of confinement as or more restrictive than sentenced inmates.  Upon information and belief, COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS lack any policy or practice for regularly reviewing or auditing decisions about mental health care and accommodations with respect to civil detainees.  COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS fail to take precautions to prevent the misclassification of civil detainees.

94.     COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS failed to adequately train, supervise, and control their employees and agents to properly identify, provide, and regularly review appropriate conditions of confinement for civil detainees to ensure that they are provided less restrictive conditions, adequate mental health care, and appropriate accommodations.  That Plaintiff ROBERTSON's pleas for more considerate treatment and appropriate mental health care were repeatedly disregarded implicates COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS given that these type of errors suggests that the mistakes made by COUNTY DEFENDANTS and

1  SUPERVISORY DEFENDANTS and their employees were a result of flawed measures

2  which were likely implemented by employees in managerial roles.

3      95.    COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS are

4  responsible for making and enforcing policies, procedures, and training related to the

5  medical and mental health care of inmates, including mental health care for anxiety,

6  dysthymia, and depression.  COUNTY DEFENDANTS and SUPERVISORY

7  DEFENDANTS approved, tolerated, and/or ratified the wrongful acts and omissions of

8  healthcare personnel with respect to Plaintiff ROBERTSON's lack of adequate mental

9  health care.

10     96.    COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS ratified

11  their subordinates' actions by choosing to place civil detainees in administrative

12  segregation at the Martinez Detention Facility, as opposed to placements in another

13  detention facility with less harsh conditions and more responsive mental health care and

14  disability accommodations.

15     97.    COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS

16  encouraged, ratified and/or approved of the policies, practices, actions, and/or omissions as

17  described in paragraphs 86 through 96 above, and knew that such conduct was unjustified

18  and would result in the violations of law described below in paragraphs 98 through 140.

19

20

21

22

23

24

25

26

27

28

**FIRST CAUSE OF ACTION**

**(Eighth Amendment to the United States Constitution – Housing Mentally Ill Prisoners in Segregation, 42 U.S.C. § 1983)**

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, and CONTRA COSTA HEALTH SERVICES (collectively, "COUNTY DEFENDANTS") and SHERIFF DAVID O. LIVINGSTON, UNDERSHERIFF MICHAEL V. CASTEN, LIEUTENANT BROOKS, LIEUTENANT VANNOY,  SERGEANT MARCHESE, SERGEANT BAILEY, DEPUTY MOSCHETTI, DEPUTY ENGELSTAD, DEPUTY CLAWSON, DEPUTY SPRINGER, DEPUTY GARCIA, DEPUTY DEMICHEL, DEPUTY EMORY, DEPUTY SIX, DEPUTY HALL, DEPUTY FRANCIS, DEPUTY DUDLEY, DEPUTY SWIFT, DEPUTY MCMILLAN, DEPUTY NELLER, DEPUTY SMITH, DEPUTY FERNANDEZ, DEPUTY HUME, DEPUTY CAI, DEPUTY BROOK, DEPUTY RIDEOUT, DEPUTY ROSAS, DEPUTY FOUI, DEPUTY VAN SCOY, DEPUTY CUBIT,  DEPUTY RODRIGUEZ, DEPUTY VARADAY (collectively, "SHERIFF'S OFFICE EMPLOYEE DEFENDANTS")**

98.     Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 97, above.

99.     By their policies, practices, actions, and omissions as described above, COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS deprived Plaintiff ROBERTSON of the rights and privileges afforded to him by the Eighth Amendment to the United States Constitution, including the right to be free from the infliction of cruel and unusual punishment.  COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS' overuse of continuous administrative segregation for mentally ill individuals incarcerated at MDF is cruel and unusual, and exacerbates mental illness.  COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS' overuse of continuous administrative segregation for mentally ill individuals incarcerated at MDF constitutes policies, practices, actions, and omissions that have been, and continue to be, implemented by COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS and their agents or employees in their individual and official capacities, in violation of the Eighth Amendment.  COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS have been and are aware of all of the deprivations complained of herein, and have condoned such conduct.

[2931239-11]

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

**SECOND CAUSE OF ACTION**

**(Eighth Amendment to the United States Constitution – Deliberate Indifference to Serious Mental Health Needs, 42 U.S.C. § 1983)**

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, and CONTRA COSTA HEALTH SERVICES (collectively, "COUNTY DEFENDANTS") and MICHAEL ELDER, MELVORA JACKSON, CANDACE KUNZ TAO, MARJORIE FRANK, PATRICIA POSADA, DAVID EZRA (collectively, "CCHS EMPLOYEE DEFENDANTS")**

100.    Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 97, above.

101.    By their policies, practices, actions, and omissions as described above, COUNTY DEFENDANTS and CCHS EMPLOYEE DEFENDANTS deprived Plaintiff ROBERTSON of the rights and privileges afforded to him by the Eighth Amendment to the United States Constitution, including the right to timely access to adequate mental health care.  COUNTY DEFENDANTS and CCHS EMPLOYEE DEFENDANTS subjected Plaintiff ROBERTSON to a substantial risk of serious harm and inadequate mental health care through their policies, practices, actions, and omissions that have been, and continue to be, implemented by COUNTY DEFENDANTS and CCHS EMPLOYEE DEFENDANTS and their agents or employees in their individual and official capacities, in violation of the Eighth Amendment.  COUNTY DEFENDANTS and CCHS EMPLOYEE DEFENDANTS have been and are aware of all of the deprivations complained of herein, and have condoned such conduct.

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

[2931239-11]

**THIRD CAUSE OF ACTION**

**(Fourteenth Amendment to the United States Constitution – Punitive Conditions of Confinement, 42 U.S.C. § 1983)**

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, and CONTRA COSTA HEALTH SERVICES (collectively, "COUNTY DEFENDANTS") and SHERIFF DAVID O. LIVINGSTON, UNDERSHERIFF MICHAEL V. CASTEN, LIEUTENANT BROOKS, LIEUTENANT VANNOY,  SERGEANT MARCHESE, SERGEANT BAILEY, DEPUTY MOSCHETTI, DEPUTY ENGELSTAD, DEPUTY CLAWSON, DEPUTY SPRINGER, DEPUTY GARCIA, DEPUTY DEMICHEL, DEPUTY EMORY, DEPUTY SIX, DEPUTY HALL, DEPUTY FRANCIS, DEPUTY DUDLEY, DEPUTY SWIFT, DEPUTY MCMILLAN, DEPUTY NELLER, DEPUTY SMITH, DEPUTY FERNANDEZ, DEPUTY HUME, DEPUTY CAI, DEPUTY BROOK, DEPUTY RIDEOUT, DEPUTY ROSAS, DEPUTY FOUI, DEPUTY VAN SCOY, DEPUTY CUBIT,  DEPUTY RODRIGUEZ, DEPUTY VARADAY (collectively, "SHERIFF'S OFFICE EMPLOYEE DEFENDANTS")**

102.    Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 99, above.

103.    By their policies, practices, actions, and omissions as described above, COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS deprived Plaintiff ROBERTSON of the rights and privileges afforded to him by the Fourteenth Amendment to the United States Constitution, including more considerate treatment and conditions of confinement than sentenced inmates whose conditions of confinement are designed to punish.  These policies, practices, actions, and omissions have been, and continue to be, implemented by COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS and their agents or employees in their individual and official capacities, in violation of the Fourteenth Amendment.  COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS have been and are aware of all of the deprivations complained of herein, and have condoned such conduct.

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

[2931239-11]

**FOURTH CAUSE OF ACTION**

**(Article I, Section 17 of the California Constitution – Housing Mentally Ill Prisoners in Segregation)**

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, and CONTRA COSTA HEALTH SERVICES (collectively, "COUNTY DEFENDANTS") and SHERIFF DAVID O. LIVINGSTON, UNDERSHERIFF MICHAEL V. CASTEN, LIEUTENANT BROOKS, LIEUTENANT VANNOY,  SERGEANT MARCHESE, SERGEANT BAILEY, DEPUTY MOSCHETTI, DEPUTY ENGELSTAD, DEPUTY CLAWSON, DEPUTY SPRINGER, DEPUTY GARCIA, DEPUTY DEMICHEL, DEPUTY EMORY, DEPUTY SIX, DEPUTY HALL, DEPUTY FRANCIS, DEPUTY DUDLEY, DEPUTY SWIFT, DEPUTY MCMILLAN, DEPUTY NELLER, DEPUTY SMITH, DEPUTY FERNANDEZ, DEPUTY HUME, DEPUTY CAI, DEPUTY BROOK, DEPUTY RIDEOUT, DEPUTY ROSAS, DEPUTY FOUI, DEPUTY VAN SCOY, DEPUTY CUBIT,  DEPUTY RODRIGUEZ, DEPUTY VARADAY (collectively, "SHERIFF'S OFFICE EMPLOYEE DEFENDANTS")**

104.    Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 103, above.

105.    By their policies, practices, actions, and omissions as described above, COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS deprived Plaintiff ROBERTSON of the rights and privileges afforded to him by the California Constitution, Article I, Section 17, including the right to be free from the infliction of cruel and unusual punishment.  COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS' overuse of continuous administrative segregation for mentally ill individuals incarcerated at MDF is cruel and unusual, and exacerbates mental illness.  COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS' overuse of continuous administrative segregation for mentally ill individuals incarcerated at MDF constitutes policies, practices, actions, and omissions that have been, and continue to be, implemented by COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS and their agents or employees, in violation of Article I, Section 17.  COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS have been and are aware of all of the deprivations complained of herein, and have condoned such conduct.

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

[2931239-11]

# FIFTH CAUSE OF ACTION

**(Article I, Section 17 of the California Constitution – Deliberate Indifference to Serious Mental Health Needs)**

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, and CONTRA COSTA HEALTH SERVICES (collectively, "COUNTY DEFENDANTS") and MICHAEL ELDER, MELVORA JACKSON, CANDACE KUNZ TAO, MARJORIE FRANK, PATRICIA POSADA, DAVID EZRA (collectively, "CCHS EMPLOYEE DEFENDANTS")**

106.    Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 97, above.

107.    By their policies, practices, actions, and omissions as described above, COUNTY DEFENDANTS and CCHS EMPLOYEE DEFENDANTS deprived Plaintiff ROBERTSON of the rights and privileges afforded to him by by the California Constitution, Article I, Section 17, including the right to ready access to adequate mental health care.  COUNTY DEFENDANTS and CCHS EMPLOYEE DEFENDANTS' subjected Plaintiff ROBERTSON to a substantial risk of harm and inadequate mental health care through their policies, practices, actions, and omissions that have been, and continue to be, implemented by COUNTY DEFENDANTS and CCHS EMPLOYEE DEFENDANTS and their agents or employees, in violation of the California Constitution, Article I, Section 17.  COUNTY DEFENDANTS and CCHS EMPLOYEE DEFENDANTS have been and are aware of all of the deprivations complained of herein, and have condoned such conduct.

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

[2931239-11]

## SIXTH CAUSE OF ACTION

**(Article I, Section 7 of the California Constitution – Punitive Conditions of Confinement)**

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, and CONTRA COSTA HEALTH SERVICES (collectively, "COUNTY DEFENDANTS") and SHERIFF DAVID O. LIVINGSTON, UNDERSHERIFF MICHAEL V. CASTEN, LIEUTENANT BROOKS, LIEUTENANT VANNOY,  SERGEANT MARCHESE, SERGEANT BAILEY, DEPUTY MOSCHETTI, DEPUTY ENGELSTAD, DEPUTY CLAWSON, DEPUTY SPRINGER, DEPUTY GARCIA, DEPUTY DEMICHEL, DEPUTY EMORY, DEPUTY SIX, DEPUTY HALL, DEPUTY FRANCIS, DEPUTY DUDLEY, DEPUTY SWIFT, DEPUTY MCMILLAN, DEPUTY NELLER, DEPUTY SMITH, DEPUTY FERNANDEZ, DEPUTY HUME, DEPUTY CAI, DEPUTY BROOK, DEPUTY RIDEOUT, DEPUTY ROSAS, DEPUTY FOUI, DEPUTY VAN SCOY, DEPUTY CUBIT,  DEPUTY RODRIGUEZ, DEPUTY VARADAY (collectively, "SHERIFF'S OFFICE EMPLOYEE DEFENDANTS")**

108.    Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 105, above.

109.    By their policies, practices, actions, and omissions as described above, COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS deprived Plaintiff ROBERTSON of the rights and privileges afforded to him by the California Constitution, Article I, Section 7, including more considerate treatment and conditions of confinement than sentenced inmates whose conditions of confinement are designed to punish.  These policies, practices, actions, and omissions have been, and continue to be, implemented by COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS and their agents or employees, in violation of Article I, Section 7.  COUNTY DEFENDANTS and SHERIFF'S OFFICE EMPLOYEE DEFENDANTS have been and are aware of all of the deprivations complained of herein, and have condoned such conduct.

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

**SEVENTH CAUSE OF ACTION**

**(Americans with Disabilities Act, 42 U.S.C. § 12132)**

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY and CONTRA COSTA COUNTY OFFICE OF THE SHERIFF**

110.    Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 109, above.

111.    The ADA prohibits public entities, including Defendants from denying "a qualified individual with a disability … the benefits of the services, programs, or activities of [the] public entity" because of the individual's disability.  42 U.S.C. § 12132.

112.    Defendants CONTRA COSTA COUNTY and SHERIFF'S OFFICE are legally responsible for all violations of the ADA committed by CONTRA COSTA HEALTH SERVICES in the course of performing its duties under its contractual arrangement with Defendants CONTRA COSTA COUNTY and/or SHERIFF'S OFFICE to provide medical and mental health care services to inmates in the Jail.  *See* 28 C.F.R. § 35.130(b)(1).

113.    The ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(1)(A), (2)(A).  Plaintiff ROBERTSON is a qualified individual with a disability as defined in the ADA, as he has impairments that substantially limit one or more major life activities.

114.    The programs, services, and activities that Defendants CONTRA COSTA COUNTY and SHERIFF'S OFFICE provide to inmates include, but are not limited to, sleeping, eating, showering, toileting, communicating with those outside the Jail by visits and telephone, exercising, entertainment, safety and security, the Jail's administrative, disciplinary, and classification proceedings, medical and mental health services, access to

[2931239-11]

1  legal materials, and discharge services.  Defendants CONTRA COSTA COUNTY and

2  SHERIFF'S OFFICE's programs, services, and activities are covered by the ADA.

3      115.   Under the ADA, Defendants CONTRA COSTA COUNTY and SHERIFF'S

4  OFFICE must provide inmates with disabilities reasonable accommodations and

5  modifications so that they can avail themselves of and participate in all programs and

6  activities offered by Defendants.

7      116.   Defendants CONTRA COSTA COUNTY and SHERIFF'S OFFICE failed to

8  accommodate Plaintiff ROBERTSON, including by:

9      a.   failing to "ensure that inmates or detainees with disabilities are

10  housed in the most integrated setting appropriate to the needs of the individuals," 28

11  C.F.R. § 35.152(b)(2);

12      b.   failing or refusing to provide Plaintiff with reasonable

13  accommodations and other services related to his disabilities, *see generally* 28 C.F.R.

14  § 35.130;

15      c.   denying Plaintiff "the opportunity to participate in or benefit from

16  [an] aid, benefit, or service" provided by Defendants, 28 C.F.R. § 35.130(b)(1)(i);

17      d.   affording Plaintiff "an opportunity to participate in or benefit from the

18  aid, benefit, or service that is not equal to that afforded others,"  28 C.F.R.

19  § 35.130(b)(1)(ii);

20      e.   providing Plaintiff "an aid, benefit, or service that is not as effective

21  in affording equal opportunity to obtain the same result, to gain the same benefit, or to

22  reach the same level of achievement as that provided to others," 28 C.F.R.

23  § 35.130(b)(1)(iii);

24      f.   providing Plaintiff "different or separate aids, benefits, or services to

25  individuals with disabilities or to any class of individuals with disabilities than is provided

26  to others unless such action is necessary to provide qualified individuals with disabilities

27  with aids, benefits, or services that are as effective as those provided to others," 28 C.F.R.

28  § 35.130(b)(1)(iv);

1         g.       limiting Plaintiff "the enjoyment of any right, privilege, advantage, or

2 opportunity enjoyed by others receiving the aid, benefit, or service," 28 C.F.R.

3 § 35.130(b)(1)(vii);

4         h.       utilizing "criteria or methods of administration" that have the effect of

5 defeating or substantially impairing accomplishment of the objectives of the public entity's

6 program with respect to individuals with disabilities," 28 C.F.R. § 35.130(b)(3)(ii);

7         i.        failing to make "reasonable modifications in policies, practices, or

8 procedures when the modifications are necessary to avoid discrimination on the basis of

9 disability," 28 C.F.R. § 35.130(b)(7);

10         j.       imposing or applying "eligibility criteria that screen out or tend to

11 screen out an individual with a disability or any class of individuals with disabilities from

12 fully and equally enjoying any service, program, or activity, unless such criteria can be

13 shown to be necessary for the provision of the service, program, or activity being offered,"

14 28 C.F.R. § 35.130(b)(8);

15         k.       failing to "administer services, programs, and activities in the most

16 integrated setting appropriate to the needs of qualified individuals with disabilities," 28

17 C.F.R. § 35.130(d);

18         l.        failing to "adopt and publish grievance procedures providing for

19 prompt and equitable resolution of complaints alleging any action that would be prohibited

20 by … [the ADA]," 28 C.F.R. § 35.107(b);

21        117.   As a result of Defendants CONTRA COSTA COUNTY and SHERIFF'S

22 OFFICE's policy and practice of discriminating against and failing to provide reasonable

23 accommodations to inmates with disabilities, Plaintiff ROBERTSON was deprived of

24 equal access to Jail activities, programs, and services for which he was otherwise qualified.

25 Defendants CONTRA COSTA COUNTY and SHERIFF'S OFFICE discriminated against

26 Plaintiff ROBERTSON by placing him in administrative segregation because of his

27 psychiatric disability and refusing to adequately accommodate him; Defendants CONTRA

28 COSTA COUNTY and SHERIFF'S OFFICE provide greater accommodations to inmates

without such disabilities, who are housed in less restrictive conditions of confinement.

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

## EIGHTH CAUSE OF ACTION

### (Americans with Disabilities Act, 42 U.S.C. § 12188)

### By Plaintiff ROBERTSON Against Defendant CONTRA COSTA HEALTH SERVICES

118.    Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 117, above.

119.    Defendant CONTRA COSTA HEALTH SERVICES is a public accommodation that owns, leases, leases to, or operates a professional office of a health care provider, hospital, or other service establishment within the meaning of 42 U.S.C. § 12181(7)(F), and Title III of the ADA's implementing regulations, 28 C.F.R. § 36.104.

120.    Plaintiff ROBERTSON is an individual with a disability and covered by Title III of the ADA, 42 U.S.C. §§ 12102(1), 12182(b); 28 C.F.R. § 36.104.

121.    By its policies and practices described above, Defendant CONTRA COSTA HEALTH SERVICES violates Title III of the ADA, 42 U.S.C. §§ 12181-12189, by discriminating against individuals with disabilities on the basis of disability, in the full and equal enjoyment of Defendant CONTRA COSTA HEALTH SERVICES' goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(a); 28 C.F.R., Part 36.  Defendant CONTRA COSTA HEALTH SERVICES discriminated against Plaintiff ROBERTSON by providing him fewer accommodations because of his psychiatric disability; Defendant CONTRA COSTA HEALTH SERVICES provides inmates without such disabilities greater accommodations in less restrictive conditions of confinement.

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

[2931239-11]

**NINTH CAUSE OF ACTION**

**(Rehabilitation Act, 29 U.S.C. § 794)**

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, and CONTRA COSTA HEALTH SERVICES (collectively, "COUNTY DEFENDANTS")**

122.    Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 121, above.

123.    At all times relevant to this action, COUNTY DEFENDANTS were recipients of federal funding within the meaning of the Rehabilitation Act.  As recipients of federal funds, COUNTY DEFENDANTS are required to reasonably accommodate inmates with disabilities in their facilities, program activities, and services, and to provide a grievance procedure.

124.    Plaintiff ROBERTSON is a qualified individual with a disability as defined in the Rehabilitation Act.  *See* 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102); *see also* 28 C.F.R. § 41.32.

125.    By their policy and practice of discriminating against and failing to reasonably accommodate inmates with disabilities, COUNTY DEFENDANTS violate Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

126.    As a result of COUNTY DEFENDANTS' discrimination against and failure to provide a grievance procedure and reasonable accommodations, Plaintiff ROBERTSON did not have equal access to Jail activities, programs, and services for which he is otherwise qualified.  COUNTY DEFENDANTS provide inmates without Plaintiff ROBERTSON's disabilities greater access to accommodations, including less restrictive facilities, more programmatic options and services, and greater access to grievance procedures.

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

# TENTH CAUSE OF ACTION

## (Cal. Gov't Code § 11135)

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, and CONTRA COSTA HEALTH SERVICES (collectively, "COUNTY DEFENDANTS")**

127.   Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 126, above.

128.   COUNTY DEFENDANTS receive financial assistance from the State of California as part of Realignment Legislation, California Government Code §§ 30025, 30026, and 30029, and through other statutes and funding mechanisms.  Plaintiff ROBERTSON is a person with a disability within the meaning of California Government Code § 11135.

129.   As described in this Complaint, COUNTY DEFENDANTS  denied Plaintiff ROBERTSON full access to the benefits of the Jail's programs and activities, which receive financial assistance from the State of California, and unlawfully subjected Plaintiff ROBERTSON to discrimination within the meaning of California Government Code § 11135(a) on the basis of his disabilities.

130.   Throughout the duration of his confinement at MDF, Plaintiff ROBERTSON, through verbal notices and written grievances, demanded that Defendants stop their unlawful discriminatory conduct described above, but COUNTY DEFENDANTS  refused to refrain from that conduct.  COUNTY DEFENDANTS discriminated against Plaintiff ROBERTSON by placing him in administrative segregation because of his psychiatric disability and refusing to adequately accommodate him; COUNTY DEFENDANTS  provide greater accommodations to inmates without such disabilities, who are housed in less restrictive conditions of confinement.

WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

[2931239-11]

**ELEVENTH CAUSE OF ACTION**

**(Cal. Civ. Code § 52.1 – Cruel and Unusual Punishment, Punitive Conditions of Confinement, Disability Discrimination, Deliberate Indifference to Mental Health Needs and Violations of Cal. Welfare & Institutions Code § 5325.1, Cal. Code Regs. tit. 9, §§ 883, 884, and Cal. Penal Code § 1026.2)**

**By Plaintiff ROBERTSON Against Defendants CONTRA COSTA COUNTY, CONTRA COSTA COUNTY OFFICE OF THE SHERIFF, CONTRA COSTA HEALTH SERVICES, SHERIFF DAVID O. LIVINGSTON, UNDERSHERIFF MICHAEL V. CASTEN, LIEUTENANT BROOKS, LIEUTENANT VANNOY, SERGEANT MARCHESE, SERGEANT BAILEY, DEPUTY MOSCHETTI, DEPUTY ENGELSTAD, DEPUTY CLAWSON, DEPUTY SPRINGER, DEPUTY GARCIA, DEPUTY DEMICHEL, DEPUTY EMORY, DEPUTY SIX, DEPUTY HALL, DEPUTY FRANCIS, DEPUTY DUDLEY, DEPUTY SWIFT, DEPUTY MCMILLAN, DEPUTY NELLER, DEPUTY SMITH, DEPUTY FERNANDEZ, DEPUTY HUME, DEPUTY CAI, DEPUTY BROOK, DEPUTY RIDEOUT, DEPUTY ROSAS, DEPUTY FOUI, DEPUTY VAN SCOY, DEPUTY CUBIT, DEPUTY RODRIGUEZ, DEPUTY VARADAY, MICHAEL ELDER, MELVORA JACKSON, CANDACE KUNZ TAO, MARJORIE FRANK, PATRICIA POSADA, DAVID EZRA, and DOES 1 through 20 (collectively "ALL DEFENDANTS")**

131.    Plaintiff ROBERTSON re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 through 130, above.

132.    Section 52.1 of the California Civil Code provides a right to relief when someone "interferes by threats, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]."

133.    As stated above, Defendants' acts, omissions, customs, and policies violated Plaintiff ROBERTSON's rights to adequate mental health care and less restrictive conditions of confinement, and his rights to be free of cruel and unusual punishment and discrimination based on disability.  These acts and omissions constituted deliberate indifference to Plaintiff ROBERTSON's rights as secured by the Eighth and Fourteenth Amendment and the analogous prohibition against cruel and unusual punishment found in Article 1, Sections 7 and 17 of the California Constitution.

134.    Plaintiff ROBERTSON is a person with a mental illness who has been involuntarily detained for evaluation or treatment since February 22, 1996.

135.    "Persons with mental illness have the same legal rights and responsibilities guaranteed all other persons by the Federal Constitution and laws and the Constitution and

1  laws of the State of California, unless specifically limited by federal or state law or

2  regulations." Cal. Welf. & Inst. Code § 5325.1 ("Section 5325.1"). As described in this

3  complaint, ALL DEFENDANTS deprived Plaintiff ROBERTSON of rights to which

4  persons with mental illness are entitled, including but not limited to:

5       a.     A right to treatment services which promote the potential of the

6  person to function independently. Treatment should be provided in ways that are least

7  restrictive of the personal liberty of the individual. Section 5325.1(a)

8       b.     A right to dignity, privacy, and humane care, Section 5325.1(b).

9       c.     A right to be free from harm, including unnecessary or excessive

10  physical restraint, isolation, medication, abuse, or neglect. Medication shall not be used as

11  punishment, for the convenience of staff, as a substitute for program, or in quantities that

12  interfere with the treatment program, Section 5325.1(c).

13       d.     A right to prompt medical care and treatment, Section 5325.1(d).

14       e.     A right to social interaction and participation in community activities,

15  Section 5325.1(g).

16       f.     A right to physical exercise and recreational opportunities, Section

17  5325.1(h).

18       136.     Plaintiff ROBERTSON is a Non-Lanterman-Petris-Short Act Patient ("Non-

19  LPS Patient"). ALL DEFENDANTS denied Plaintiff ROBERTSON rights afforded to

20  Non-LPS Patients under Title 9 of the California Code of Regulations § 883 ("Section

21  883"), including:

22       a.     A right to privacy, dignity, respect and humane care, Section 883(1).

23       b.     A right to receive treatment for a diagnosed mental disorder that is

24  provided in a method least restrictive of individual liberty and promotes personal

25  independence, Section 883(2).

26       c.     A right to be free from harm including abuse or neglect, and

27  unnecessary or excessive medication, restraint, seclusion, or protective or administrative

28  isolation. Medication, restraint, seclusion, or protective or administrative isolation shall not

1  be used as punishment, as retaliation for filing complaints, for the convenience of staff, as

2  a substitute for a treatment program or in quantities that interfere with the patient's

3  treatment, Section 883(5).

4       d.   A right to be informed of the procedures for filing complaints and the

5  process for appeals when complaints are not resolved to the patient's satisfaction, Section

6  883(7).

7       e.   A right to access the services of a Patients' Rights Advocate, Section

8  883(8).

9       f.   A right to opportunities for physical exercise and recreational

10  activities, Section 883(11).

11       137.   Plaintiff ROBERTSON is a Non-LPS Patient.  ALL DEFENDANTS denied

12  Plaintiff ROBERTSON rights afforded to Non-LPS Patients under Title 9 of the California

13  Code of Regulations § 884 ("Section 884") that are subject to denial only for good cause as

14  specified under Section 884, including:

15       a.   A right to keep and use personal possessions as space permits, except

16  items and materials that are listed as contraband by the facility, Section 884(1).

17       b.   A right to have access to individual secured storage space for personal

18  possessions in accordance with the formal policies and procedures of the facility, Section

19  884(2).

20       c.   A right to personal visits during regularly scheduled visiting days and

21  hours. The right to have visits shall not be denied except as is necessary for reasonable

22  security of the facility and the safety of persons, Section 884(4).

23       d.   A right to access telephones to make and receive confidential

24  telephone calls, or to have such calls made for them, Section 884(5).

25       e.   A right to have access to legal reference material, Section 884(8).

26       f.   A right to participate in appropriate programs of publicly supported

27  education that are consistent with the patient's treatment plan and with the secure

28  treatment facility environment, Section 884(9).

1        g.     A right to social interaction. The formation of supervised patient

2 leisure time activity groups that promote educational, social, cultural and recreational

3 interests of participating patients shall be permitted, except for activities that pose a threat

4 to safety and security, Section 884(10).

5     138.   Plaintiff ROBERTSON's petition for the restoration of his sanity pursuant to

6 Cal. Penal Code § 1026.2 was filed on February 29, 2012.  Plaintiff ROBERTSON was

7 transferred to MDF on June 11, 2012 for the hearing.

8     139.   Cal. Penal Code § 1026.2(b) requires that "[t]he community program

9 director or a designee shall … designate a facility within a reasonable distance from the

10 court in which the person may be detained pending the hearing on the application for

11 release. The facility so designated shall continue the program of treatment, shall provide

12 adequate security, and shall, to the greatest extent possible, minimize interference with the

13 person's program of treatment."  "[A] county jail may not be designated unless the

14 services specified in subdivision (b) are provided and accommodations are provided which

15 ensure both the safety of the person and the safety of the general population of the jail."

16 Cal. Penal Code § 1026.2(c).

17     140.   COUNTY DEFENDANTS and SUPERVISORY DEFENDANTS failed to

18 continue Plaintiff ROBERTSON's program of treatment, failed to minimize interference

19 with Plaintiff ROBERTSON's program of treatment, and failed to adequately ensure

20 Plaintiff ROBERTSON's safety, as required under Section 1026.2(b).

21     WHEREFORE, Plaintiff ROBERTSON requests relief as outlined below.

22     **PRAYER FOR RELIEF**

23     Plaintiff ROBERTSON has suffered irreparable injury as a result of the unlawful

24 acts, omissions, policies, and practices of the Defendants as alleged herein.  There is a

25 realistic likelihood that Plaintiff ROBERTSON will suffer further irreparable injury as a

26 result of the unlawful acts, omissions, policies, and practices of the Defendants because he

27 is likely to be returned to MDF in connection with further proceedings related to his

28 pursuit of the restoration of his sanity.

1    WHEREFORE, Plaintiff ROBERTSON prays for judgment and the following
2  specific relief against Defendants CONTRA COSTA COUNTY, CONTRA COSTA
3  COUNTY OFFICE OF THE SHERIFF, CONTRA COSTA HEALTH SERVICES,
4  SHERIFF DAVID O. LIVINGSTON; UNDERSHERIFF MICHAEL V. CASTEN;
5  LIEUTENANT BROOKS; LIEUTENANT VANNOY; SERGEANT MARCHESE;
6  SERGEANT BAILEY; DEPUTY MOSCHETTI; DEPUTY ENGELSTAD; DEPUTY
7  CLAWSON; DEPUTY SPRINGER; DEPUTY GARCIA; DEPUTY DEMICHEL;
8  DEPUTY EMORY; DEPUTY SIX; DEPUTY HALL; DEPUTY FRANCIS; DEPUTY
9  DUDLEY; DEPUTY SWIFT; DEPUTY MCMILLAN; DEPUTY NELLER; DEPUTY
10  SMITH; DEPUTY FERNANDEZ; DEPUTY HUME; DEPUTY CAI; DEPUTY BROOK;
11  DEPUTY RIDEOUT; DEPUTY ROSAS; DEPUTY FOUI; DEPUTY VAN SCOY;
12  DEPUTY CUBIT; DEPUTY RODRIGUEZ; DEPUTY VARADAY; MICHAEL ELDER;
13  MELVORA JACKSON; CANDACE KUNZ TAO; MARJORIE FRANK; PATRICIA
14  POSADA; DAVID EZRA; and DOES 1 through 20, as follows:

15    A declaratory judgment that the conditions, acts, omissions, policies, and practices
16  described above are in violation of the rights of Plaintiff ROBERTSON under of the
17  Eighth and Fourteenth Amendments of the United States Constitution; Article I, Sections 7
18  and 17 of the California Constitution; the Americans with Disabilities Act; Section 504 of
19  the Rehabilitation Act; California Government Code § 11135; and California Civil Code §
20  52.1.

21    An order enjoining Defendants, their agents, officials, employees, and all persons
22  acting in concert with them under color of state law or otherwise, from continuing the
23  unlawful acts, conditions, and practices described in this complaint;

24    An order retaining jurisdiction of this case until Defendants have fully complied
25  with the orders of this Court, and there is a reasonable assurance that Defendants will
26  continue to comply in the future absent continuing jurisdiction;

27    An award for compensatory damages against Defendants;

28    An award for punitive damages against Defendants;

1        An award pursuant to 29 U.S.C. §794a; 42 U.S.C. §§1988, 12205; and California

2  Code of Civil Procedure §1021.5 of the costs of this suit and reasonable attorneys' fees and

3  litigation expenses;

4        An award to Plaintiffs of such other and further relief as the Court deems just and

5  proper.

6

7  DATED: April 14, 2016        Respectfully submitted,

8                  ROSEN BIEN GALVAN & GRUNFELD LLP

9

10               By:  */s/ Van Swearingen*

11                   Van Swearingen

12               Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28