United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY DAVID RAY ROBERTSON,<br><br>Plaintiff,<br><br>v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>Defendants. | Case No. 15-cv-02549-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 31 |

**INTRODUCTION**

Plaintiff Randy David Ray Robertson brings this action under 42 U.S.C. § 1983 and other federal and state laws challenging his conditions of confinement while housed as a civil detainee in the Martinez Detention Facility ("MDF") in Contra Costa County.  Although Robertson names dozens of defendants, he has served only three: Contra Costa County (the "County"), Contra Costa Office of the Sheriff (the "Sherriff's Office"), and Contra Costa Health Services ("Health Services").  These defendants (collectively, "County Defendants") move to dismiss various aspects of Robertson's first amended complaint ("FAC").  County Defendants correctly point out that Robertson's first and second causes of action, brought under section 1983, may not be asserted against the Sherriff's Office or Health Services, and those causes of action are DISMISSED WITHOUT LEAVE TO AMEND with respect to those two defendants.  In all other respects, County Defendants' motion to dismiss is DENIED.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

On February 22, 1996, after being found not guilty by reason of insanity under California Penal Code section 1026 for violations of California Penal Code sections 12310(b), 245(a)(1), and 451(a), Robertson was committed to the California Department of State Hospitals for life or until

his sanity was restored.[1]  FAC ¶ 8 (Dkt. No. 20).  On February 29, 2012, Robertson filed a petition

for restoration of sanity pursuant to California Penal Code section 1026.2.  *Id.* ¶ 69.  On April 17,

2012, the Superior Court of California for the County of Contra Costa set a hearing on the petition,

and on June 11, 2012, Robertson was transferred to the MDF to prepare for and attend the hearing.

*Id.* ¶ 8.  Robertson remained housed at the MDF for the next three years, until May 21, 2015.[2]  *Id.*

Throughout that time, he was detained under civil process.  *Id.*

Robertson has a history of depression going back to 1996.  *Id.* ¶ 83.  He has been

diagnosed with dysthymia (which he describes as a depressed mood that lasts for at least two

years, also known as Persistent Depressive Disorder) by several doctors, and has been prescribed

antidepressants for over ten years.  *Id.* ¶¶ 83-84; *see also* Oppo. at 1-2 (Dkt. No. 36).  He states

that his depression is well documented by the various institutions in which he has resided since

1996, including several institutions within the California Department of State Hospitals and the

California Department of Corrections.  FAC ¶ 84; *see also* Oppo. at 2.  In addition to depression,

Robertson has a history of anxiety and insomnia.  FAC ¶ 84.

Upon his arrival at MDF, and throughout his time there, Robertson complained to

numerous individuals, both orally and in writing, about his status as a civil detainee and about his

depression, anxiety, and insomnia.[3]  *See, e.g., id.* ¶¶ 72-75, 82-85.  Nevertheless, Robertson was

placed in administrative segregation in "Section C" of "D Module" shortly after arriving at MDF.

*Id.* ¶ 71.  He remained there for approximately two-and-a-half years, until December 7, 2014,

when he was transferred to administrative segregation in "M Module" and "Q Module" for the

remainder of his incarceration at MDF.  *Id.* ¶ 76.  During Robertson's administrative segregation

---

[1] County Defendants state in their opening brief that Robertson's convictions arise from an
incident in which he threw a Molotov cocktail into a convenience store, burning several people
inside.  Mot. at 2 (Dkt. No. 31).

[2] Robertson does not allege, and the parties do not explain, why Robertson remained housed at
MDF for so long.  There is no indication that the scheduled hearing on his petition for restoration
of sanity ever occurred.

[3] Robertson alleges that he began complaining about his status as a civil detainee and his not-
guilty-by-reason-of-insanity verdict upon his arrival at MDF in June 2012.  *See* FAC ¶ 70.  It is
not as clear when he began complaining specifically about his mental health.  The first complaint
specifically about his mental health that he describes in the FAC was in June 2013.  *See id.* ¶ 83.

United States District Court
Northern District of California

1    in D Module, Health Services employee and individual defendant Patricia Posada observed in her

2    November 1, 2013 progress note that Robertson "presents upset and irritable with dysthymia." *Id.*

3    ¶ 83.  Another progress note, this one signed by Health Services employee and individual

4    defendant Melovora Jackson, states that Robertson "is a candidate for psychiatric treatment." *Id.*

5            Robertson describes D Module as

6                    a restrictive, punitive environment designed to limit movement. All
                     cells have single beds, and are equipped with microphones that can
7                    be used at any time and without notice by jail staff to monitor
                     inmate communications. Doors operate only by computer. Toilets
8                    are controlled by timers. Harsh fluorescent lights shine on inmate
                     bunks 24 hours per day, disorienting inmates and making sleep
9                    difficult. There are no reflective mirrors to facilitate the adequate
                     maintenance of one's appearance. One single, solitary hour of out-
10                   of-cell time every other day is afforded to inmates in the D
                     Module . . . Section C lacks a yard and its residents can access a
11                   yard only on the weekend, through reservation, and at most only
                     once per week.

12   *Id.* ¶ 66.  He describes M and Q Modules as somewhat less restrictive, although administrative

13   segregation in those Modules also involves a high degree of isolation and significantly limited out-

14   of-cell time.  *Id.* ¶¶ 67-68.

15           Robertson alleges that his "mental health and psychiatric functioning significantly

16   deteriorated as a result of the punitive nature of his conditions of confinement," and that this

17   deterioration was "magnified by defendants' failure to provide him with adequate mental health

18   care." *Id.* ¶ 83.  With respect to the lack of adequate mental health care, Robertson highlights

19   (1) that MDF does not offer therapeutic programming for any inmates suffering from mental

20   illness and that he was not provided with any individual or group therapy, despite his requests, *id.*

21   ¶¶ 61, 82; and (2) that he was repeatedly denied medication for his mental illness, *id.* ¶ 82.  He

22   states that "other inmates without the same psychiatric disability [as him] received greater access

23   to programming and/or appropriate medication for their mental illness." *Id.* ¶ 85.

24           According to County Defendants, Robertson voluntarily withdrew his petition for

25   restoration of sanity in 2015.  Mot. at 2.  He is currently detained at Coalinga State Hospital.  FAC

26   ¶ 8.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.    PROCEDURAL BACKGROUND

Robertson filed this action pro se on June 9, 2015.  Dkt. No. 1.  On November 30, 2015, I dismissed his complaint with leave to amend and stayed the case pending appointment of counsel pursuant to the Federal Pro Bono Project.  Dkt. Nos. 9, 10.  Robertson, represented by counsel, filed the FAC on April 14, 2016.  Dkt. No. 20.

The FAC names 41 defendants and brings 11 causes of action.  The defendants are organized into four categories: (1) the County Defendants, (2) the "Supervisory Defendants," (3) the "Sheriff's Office Employee Defendants," and (4) the "Health Services Defendants."  FAC ¶¶ 50-53.  As noted above, the County Defendants are the County, the Sherriff's Office, and Health Services.  *Id.* ¶ 50.  The other categories of defendants are comprised of individual employees of the County.  *Id.* ¶¶ 51-53.

The 11 causes of action are (1) section 1983, for "overus[ing] continuous administrative segregation for mentally ill individuals," in violation of the Eighth Amendment, *id.* ¶ 99; (2) section 1983, for denial of Robertson's "right to timely access to adequate mental health care," in violation of the Eighth Amendment, *id.* ¶ 101; (3) section 1983, for failing to provide Robertson with "more considerate treatment and conditions of confinement than sentenced inmates whose conditions of confinement are designed to punish," in violation of the Fourteenth Amendment, *id.* ¶ 103; (4) violation of article 1, section 17 of the California Constitution, for "overus[ing] continuous administrative segregation for mentally ill individuals," *id.* ¶ 105; (5) violation of article I, section 17 of the California Constitution, for denial of Robertson's "right to timely access to adequate mental health care," *id.* ¶ 107; (6) violation of article I, section 7 of the California Constitution, for failing to provide Robertson with "more considerate treatment and conditions of confinement than sentenced inmates whose conditions of confinement are designed to punish," *id.* ¶ 109; (7) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *id.* ¶¶ 110-17; (8) violation of the ADA, 42 U.S.C. § 12188, *id.* ¶¶ 118-21; (9) violation of the Rehabilitation Act, 29 U.S.C. § 794, *id.* ¶¶ 122-26; (10) violation of California Civil Code section 11135, *id.* ¶¶ 127-30; and (11) violation of California Civil Code section 52.1, *id.* ¶¶ 131-40.

Robertson seeks declaratory judgment, an injunction prohibiting defendants from

4

1      "continuing the unlawful acts, conditions, and practices described in [the FAC]," compensatory

2      and punitive damages, and reasonable attorney's fees and costs.  FAC at Prayer for Relief.

3          Robertson served County Defendants with the FAC on April 20 and 21, 2016.  Dkt. No.

4      29.  He has not yet served the FAC on any of the individual defendants.  Dkt. No. 40.[4]  County

5      Defendants filed their motion to dismiss on May 26, 2016.  Dkt. No. 31 ("Mot.").  They do not

6      dispute that Robertson's third cause of action states a claim but move to dismiss each of his other

7      causes of action under Federal Rule of Civil Procedure 12(b)(6).  Mot. at 1-2.  They also argue

8      that Robertson lacks standing to seek injunctive relief (given that he is no longer incarcerated at

9      MDF), and that the Sheriff's Office and Health Services should be dismissed from the first and

10     second causes of action as improper entity defendants under section 1983.  *Id.* at 9-10.  I heard

11     argument from the parties on July 19, 2016.  Dkt. No. 43.

**LEGAL STANDARD**

13         Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain

14     statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in

15     order to "give the defendant fair notice of what the claim is and the grounds upon which it rests,"

16     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations

17     omitted).

18         A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

19     12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

20     2001).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable

21     legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela*

22     *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  While a complaint "need not contain

23     detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state

24     a claim to relief that is plausible on its face."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th

25     Cir. 2009) (internal quotation marks and citations omitted).  A claim is facially plausible when it

26     "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

27

28     [4] The parties have stipulated to an extension of Robertson's deadline to serve the FAC on the
       individual defendants until October 11, 2016.  Dkt. No. 40.

*United States District Court*
*Northern District of California*

5

1    alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

2         In considering whether a claim satisfies this standard, the court must "accept factual

3    allegations in the complaint as true and construe the pleadings in the light most favorable to the

4    nonmoving party." *Manzarek v. St. Paul Fire & Marines Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

5    2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to

6    avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). A

7    court may "reject, as implausible, allegations that are too speculative to warrant further factual

8    development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

9                                          **DISCUSSION**

10   **I.      IMPROPER ENTITY DEFENDANTS UNDER SECTION 1983**

11        County Defendants move to dismiss the Sheriff's Office and Health Services from the first

12   and second causes of action as improper entity defendants under section 1983. Mot. at 10; *see*

13   *also* Oppo. at 21-23; Reply at 10-11 (Dkt. No. 38).[5] This portion of the County Defendants'

14   motion is GRANTED. The Ninth Circuit has observed that "municipal police departments and

15   bureaus are generally not considered 'persons' within the meaning of [section] 1983," *United*

16   *States v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005), and numerous district courts have

17   dismissed from section 1983 actions entity defendants analogous (or identical) to the Sheriff's

18   Office and Health Services, *see, e.g., Drouin v. Contra Costa Cty. Sheriff's Dep't*, No. 15-cv-

19   03694-KAW, 2015 WL 7258146, at *2-3 (N.D. Cal. Nov. 17, 2015) (dismissing section 1983

20   claims against the "Contra Costa County Sheriff's Department" on the ground that "[s]heriff's

21   departments and police departments are not usually considered legal entities subject to suit")

22   (internal quotation marks omitted); *Roy v. Contra Costa Cty.*, No. 15-cv-02672-TEH, 2015 WL

23   5698743, at *3 (N.D. Cal. Sept. 29, 2015) (same, with respect to section 1983 claims against the

24   "Contra Costa County Sheriff's Office"); *Castro v. City of Union City*, No. 14-cv-00272-MEJ,

25   2014 WL 4063006, at *5 (N.D. Cal. Aug. 14, 2014) (same, with respect to section 1983 claims

26

27   _____

     [5] County Defendants do not object to the Sheriff's Office and Health Services being named as
28   defendants under the third cause of action, which is also brought under section 1983.

United States District Court
Northern District of California

1    against the Union City Police Department).  In line with these decisions, the first and second

2    causes of action are DISMISSED WITHOUT LEAVE TO AMEND with respect to the Sheriff's

3    Office and Health Services.

4    **II.      ROBERTSON'S CRUEL AND UNUSUAL PUNISHMENT CLAIMS**

5              Robertson's first, second, fourth, and fifth causes of action allege violations of the Eighth

6    Amendment's prohibition of cruel and unusual punishment, and of the analogous provision of the

7    California Constitution (article I, section 17).[6]  County Defendants initially moved to dismiss these

8    causes of action on the ground that "[c]laims brought by an inmate held based on a civil

9    commitment are analyzed under the Fourteenth Amendment, not the Eighth Amendment."  Mot. at

10   3; *see also Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004).  Robertson responded by conceding

11   that the causes of action were improperly pleaded as cruel and unusual punishment claims but

12   "invit[ing] County Defendants to stipulate that [his] Eighth Amendment claims be treated as

13   Fourteenth Amendment claims and that his claims for violations of article I, section 17 of the

14   California Constitution be considered as violations of article I, section 7."  Oppo. at 5.  County

15   Defendants have agreed to this modification of the claims.  Reply at 2.  They argue, however, that

16   Robertson's first, second, fourth, and fifth causes of action still fail because he has not adequately

17   alleged that MDF officials failed to exercise professional judgment in their care of him.  *Id.* at 2-6.

18             The parties appear to agree that, under the due process guarantees of the Fourteenth

19   Amendment and article I, section 7 of the California Constitution, a decision regarding the medical

20   care of a civil detainee made by a professional is "presumptively valid," and may support liability

21   "only when the decision . . . is such a substantial departure from accepted professional judgment,

22   practice, or standards as to demonstrate that the person responsible actually did not base the

23   decision on such a judgment."  *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982); *see also* Oppo. at

24   6; Reply at 4.  The Ninth Circuit has held that this "*Youngberg* professional judgment standard"

25   requires that, "in the face of known threats to patient safety, state officials may not act (or fail to

26   act) with conscious indifference, but must take adequate steps in accordance with professional

27   _____

28   [6] That section provides that "[c]ruel or unusual punishment may not be inflicted or excessive fines
     imposed."  Cal. Const. art. I, § 17.

United States District Court
Northern District of California

1    standards to prevent harm from occurring." *Ammons v. Washington Dep't of Soc. & Health*

2    *Servs.*, 648 F.3d 1020, 1027, 1030 (9th Cir. 2011) (internal quotation marks omitted).  The

3    standard "differs from the 'deliberate indifference' standard used in Eighth Amendment cruel and

4    unusual punishment cases, in that persons who have been involuntarily committed are entitled to

5    more considerate treatment and conditions of confinement than criminals whose conditions of

6    confinement are designed to punish." *Mitchell v. Washington*, 818 F.3 436, 443 (9th Cir. 2016)

7    (internal quotation marks, alterations, and emphasis omitted).  Nevertheless, "the Constitution

8    only requires that the courts make certain that professional judgment in fact was exercised.  It is

9    not appropriate for the courts to specify which of several professionally acceptable choices should

10   have been made." *Youngberg*, 457 U.S. at 321 (internal quotation marks omitted).

11          Robertson argues that he has adequately pleaded that County Defendants' decisions

12   regarding his mental health care substantially departed from accepted professional judgment,

13   based on his allegations that he informed County Defendants of his not-guilty-by-reason-of-

14   insanity verdict and his worsening mental health problems, yet they continued to house him in

15   administrative segregation and refused to provide him with therapy or medication.  Oppo. at 7.

16   County Defendants respond that Robertson's allegations establish that Robertson "complained to

17   county jail officials that he was suffering from depression, and that those officials considered his

18   complaints, evaluated him, reviewed his medical records . . . , and concluded that he was not

19   suffering from a major mental disorder and did not require any medication."  Reply at 6.

20   According to County Defendants, this fact pattern, without more, cannot support liability under

21   the *Youngberg* professional judgment standard.  *Id.*

22          I agree with Robertson.  The fact of his not-guilty-by-reason-of-insanity verdict and

23   extended civil commitment (of which MDF officials were allegedly aware), combined with his

24   allegations that he made numerous complaints regarding his worsening mental health problems,

25   and that at least two Health Services employees noted his mental health problems yet made no

26   changes in his conditions of confinement, are sufficient to plausibly establish that the decisions

27   regarding his mental health care substantially departed from accepted professional judgment.  *See*

28   *Brinkley v. Ahlin*, No. 09-cv-01858, 2012 WL 1067159, at *4 (E.D. Cal. Mar. 28, 2012) (plaintiff

1   civil detainee stated claim for deficient medical care under the *Youngberg* professional judgment

2   standard where plaintiff alleged that defendant was "aware that plaintiff needed some immediate

3   treatment, and that [the treatment] had been ordered by plaintiff's surgeon," yet refused to provide

4   the treatment); *Huskey v. Ahlin*, No. 09-cv-01576, 2011 WL 5838121, at *2-4 (E.D. Cal. Nov. 21,

5   2011) (same, where plaintiff alleged that he informed defendant "of the need for immediate dental

6   care [but defendant] delayed [plaintiff's] treatment by . . . over a month [and] denied plaintiff's

7   request to seek immediate treatment from an outside dental care provider at plaintiff's own

8   expense"); *Endsley v. Luna*, No. 06-cv-06961, 2009 WL 789902, at *5 (C.D. Cal. Mar. 23, 2009)

9   (same, where plaintiff alleged that "defendants [implemented a particular psychiatric treatment]

10   knowing that this interfered with plaintiff's prescribed treatment, would exacerbate plaintiff's

11   psychiatric distress, and would cause plaintiff's regression").

12        County Defendants may ultimately be able to establish, as a matter of law, that the

13   decisions regarding Robertson's mental health care were within the scope of "professionally

14   acceptable choices." *Youngberg*, 457 U.S. at 323.  But they will have to do so after the parties

15   have had more of an opportunity to develop the factual record.  This portion of County

16   Defendants' motion is DENIED.

17   **III.    ROBERTSON'S DISABILITY DISCRIMINATION CLAIMS**

18        Robertson's seven, eighth, ninth, and tenth causes of action allege violations of the ADA,

19   the Rehabilitation Act, and California Government Code section 11135 for discriminating against

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1    him on the basis of his disability.[7]  The parties treat each of these causes of action as requiring a

2    showing of the same four elements: "(1) the plaintiff is an individual with a disability; (2) the

3    plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's

4    services, programs, or activities; (3) the plaintiff was either excluded from participation in or

5    denied the benefits of the public entity's services, programs, or activities, or was otherwise

6    discriminated against by the public entity; and (4) such exclusion, denial of benefits, or

7    discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895

8    (9th Cir. 2002); *see also* Oppo. at 11-16; Reply at 6-7.  The Ninth Circuit has recognized that the

9    ADA and Rehabilitation Act were designed "to protect disabled persons from discrimination

10   arising out of both discriminatory animus and thoughtlessness, indifference, or benign neglect."

11   *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (internal quotation marks omitted).

12   Accordingly, the statues "cover both intentional discrimination and discrimination as a result of

13   facially neutral laws." *Id.*  Even if facially neutral, a policy, practice, or procedure that denies

14   disabled persons meaningful access to state services, programs, or activities by reason of their

15   disability constitutes disability discrimination in violation of the ADA and Rehabilitation Act.  *Id.*

16   at 1485; *see also United States Am. v. Cty. of Los Angeles*, No. 15-cv-05903, 2016 WL 2885855,

17

18   ───────────────────

[7] California Government Code section 11135 provides, in relevant part:

19
20           (a) No person in the State of California shall, on the basis of race,
             national origin, ethnic group identification, religion, age, sex, sexual
21           orientation, color, genetic information, or disability, be unlawfully
             denied full and equal access to the benefits of, or be unlawfully
             subjected to discrimination under, any program or activity that is
22           conducted, operated, or administered by the state or by any state
             agency, is funded directly by the state, or receives any financial
23           assistance from the state . . .

24           (b) With respect to discrimination on the basis of disability,
             programs and activities subject to subdivision (a) shall meet the
25           protections and prohibitions contained in Section 202 of the federal
             Americans with Disabilities Act of 1990 (42 U.S.C. § 12132), and
26           the federal rules and regulations adopted in implementation thereof,
             except that if the laws of this state prescribe stronger protections and
27           prohibitions, the programs and activities subject to subdivision (a)
             shall be subject to the stronger protections and prohibitions.

28   Cal. Govt. Code § 11135(a), (b).

10

United States District Court
Northern District of California

1   at *5 (C.D. Cal. May 17, 2016).

2        County Defendants argue that Robertson's disability discrimination claims should be

3   dismissed because Robertson has not adequately alleged that he was placed in administrative

4   segregation because of his disability.[8]  Mot. at 7-8.  I disagree.  Robertson specifically alleges that

5   he was placed in administrative segregation "because of his psychiatric disability."  *Id.* ¶¶ 89, 117,

6   121, 130.  He also alleges that upon his arrival at MDF he immediately informed multiple

7   individual defendants that he had been civilly committed for more than fifteen years pursuant to a

8   not-guilty-by-reason-of-insanity verdict, and that his mental health problems were well

9   documented by the institutions in which he had previously resided.  *Id.* ¶¶ 84-85.  These

10  allegations, while thin, are sufficient to raise a plausible inference that Robertson was placed in

11  administrative segregation by reason of his psychiatric disability.  I recognize that there is some

12  tension between Robertson's assertion that he was placed in administrative segregation because of

13  his psychiatric disability, and his allegations that he was told that he was placed in administrative

14  segregation because he "ha[d] open criminal charges," *id.* ¶¶ 73, 79, 84, and that Health Services

15  employee and individual defendant David Ezra examined him and concluded that there was "no

16  evidence of any major me[n]tal disorder" and "[n]o indication for medication referral," *id.* ¶ 83

17  (internal quotation marks and alterations omitted).  However, I do not think that this tension is so

18  great as to make Robertson's disability discrimination claims implausible.  *See S. Coast*

19  *Properties, LLC v. T-Mobile W., LLC*, No. 15-cv-03888, 2015 WL 4554368, at *8-9 (C.D. Cal.

20  July 28, 2015) (finding plaintiff's allegations "somewhat inconsistent" but nevertheless sufficient

21  to survived a Rule 12(b)(6) motion).

22       Accordingly, this portion of County Defendants' motion is DENIED.  The seventh through

23  tenth causes of action may proceed.  *Cf. Biselli v. County of Ventura*, 2012 U.S. Dist. LEXIS

24  79326, *43-45 (C.D. Cal. June 4, 2012) (finding a genuine issue of material fact on an ADA claim

25  based on a pretrial detainee's incarceration in administrative segregation, where the plaintiffs

26

27  ───────────────

28  [8] In their opening brief, County Defendants also argued that Robertson had not adequately alleged
    that he had a disability.  Mot. at 7.  County Defendants do not reassert this argument in their reply
    brief and appear to have abandoned it.  *See* Reply at 6-8.

1    "adduced evidence reflecting that [the pretrial detainee] was classified by the jail to be housed in

2    [administrative segregation], the most restrictive area of the jail, based on conduct that was

3    specifically linked to his mental illness").

4    **IV.    COMPLIANCE WITH THE CALIFORNIA TORT CLAIMS ACT**

5            Robertson's fourth, fifth, sixth, tenth, and eleventh causes of action all bring claims under

6    California state law.  County Defendants move to dismiss these claims on the ground that

7    Robertson has not alleged that he complied with the claim presentation requirements of the

8    California Tort Claims Act ("CTCA").  Mot. at 8-9.  Robertson admits that he did not comply with

9    the CTCA but argues that his California state law claims may still proceed because they are for

10   equitable relief, not money damages.  Oppo. at 17-18; *see also Snipes v. City of Bakersfield*, 145

11   Cal. App. 3d 861, 870 (1983) (noting that the CTCA "exempts actions seeking specific relief other

12   than money or damages, such as injunctive or declaratory relief").  County Defendants respond

13   that Robertson's request for equitable relief is "merely incidental" to his request for money

14   damages, and that the claims are therefore still subject to the CTCA.  Reply at 8-9; *see also Loehr*

15   *v. Ventura Cty. Cmty. Coll. Dist.*, 147 Cal. App. 3d 1071, 1081 (1983) (holding that the general

16   rule that the CTCA does not apply to claims for equitable relief "has no application . . . where a

17   petition for extraordinary relief is merely incidental or ancillary to a prayer for damages," and the

18   "primary purpose of [the] claims is pecuniary in nature").

19           The CTCA does not bar Robertson's claims under California state law.  This is not a case

20   where the request for equitable relief is merely incidental or ancillary to the request for money

21   damages.  Money damages are not even available under Robertson's fourth, fifth, sixth, and tenth

22   causes of action.  *See* Oppo. at 17; Reply at 8-9.  Those causes of action bring claims under article

23   I, section 7 of the California Constitution, article I, section 17 of the California Constitution, and

24   California Government Code section 11135, none of which allows for private actions for money

25   damages.  *See Katzberg v. Regents of Univ. of California*, 29 Cal.4th 300, 324 (2002) (finding "no

26   indication [of] an implied right to seek damages for a violation of the due process liberty interest"

27   protected by of article I, section 7 of the California Constitution); *Giraldo v. California Dep't of*

28   *Corr. & Rehab.*, 168 Cal. App. 4th 231, 256 (2008) (finding "no basis to recognize a claim for

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    damages under article I, section 17 of the California Constitution"); *Donovan v. Poway Unified*

2    *Sch. Dist.*, 167 Cal. App. 4th 567, 594-95 (2008) (noting that the private right of action available

3    under section 11139 is limited to a "civil action for equitable relief") (internal quotation marks

4    omitted).  County Defendants assert that monetary damages are available under Robertson's

5    eleventh cause of action, for violation of California Civil Code section 52.1.  Reply at 9.  But even

6    assuming that they are, Robertson states that he is seeking only equitable relief under that cause of

7    action, not money damages.  Oppo. at 18.

8    Given that Robertson's claims under California law seek only equitable relief, I cannot say

9    that the "primary purpose of [those] claims is pecuniary in nature."  *Loehr*, 147 Cal. App. 3d at

10   1081; *see also Khan v. San Francisco Hous. Auth.*, No. 07-cv-06209-CW, 2008 WL 2024600, at

11   *4 (N.D. Cal. May 8, 2008) (finding that plaintiffs' request for injunctive relief was not ancillary

12   to their request for money damages where "th[e] case [was] primarily about plaintiffs' desire to be

13   afforded safe housing free from discriminatory threats, intimidation, and victimization, not about

14   recovery for a pecuniary injury").  This portion of County Defendants' motion is DENIED.

15   **V.    INJUNCTIVE RELIEF**

16   Robertson seeks "[a]n order enjoining defendants, their agents, officials, employees, and

17   all persons acting in concert with them under color of state law or otherwise, from continuing the

18   unlawful acts, conditions, and practices described in this complaint."  FAC at Prayer for Relief.

19   County Defendants argue that Robertson cannot pursue this request because he is no longer

20   housed at MDF and therefore lacks standing to seek injunctive relief.  Mot. at 9-10.  Robertson

21   responds by pointing to paragraph 90 of the FAC, where he alleges that

22   
23   
24   
25   
>            Plaintiff ROBERTSON will continue to seek to have his sanity
>            restored. A petition for the restoration of sanity filed by Plaintiff
>            ROBERTSON will be heard by the Contra Costa County Superior
>            Court. Accordingly, there is a realistic probability that Plaintiff
>            ROBERTSON will be subjected to Defendants' unlawful acts,
>            omissions, policies, and practices discussed herein because he is
>            likely to be returned to MDF in connection with further proceedings
>            related to his pursuit of the restoration of his sanity.

26   Oppo. at 19 (quoting FAC ¶ 90).  Robertson also submits a declaration in which he states that his

27   "petition for restoration of sanity is currently pending in Contra Costa County Superior Court

28

13

1   (Case No. 5-120327-2)."  Robertson Decl. ¶ 2 (Dkt. No. 36-1).  He asserts that "[w]hen [he]

2   attends his [restoration of sanity] hearing . . . , he will be returned to MDF and placed in punitive

3   conditions of confinement and subjected to inadequate accommodation and mental health

4   services."  Oppo. at 19.

5           "[W]here, as here, a plaintiff seeks prospective injunctive relief, he must demonstrate that

6   he is realistically threatened by a repetition of the violation."  *Armstrong v. Davis*, 275 F.3d 849,

7   860-61 (9th Cir. 2001) (internal quotation marks, alterations, and emphasis omitted); *accord*

8   *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014).  Robertson has clearly made this showing

9   based on his allegations and declaration regarding his continuing efforts to have his sanity

10  restored.  County Defendants respond by requesting judicial notice of a minute order from *People*

11  *v. Randy David Robertson*, Case No. 05-951996-8, stating that there are "no further court dates" in

12  the case, Dkt. Nos. 37, 37-1,[9] but according to Robertson's declaration, his currently pending

13  petition for restoration of sanity is docketed as Case No. 5-120327-2, not Case No. 05-951996-8.

14  *See* Robertson Decl. ¶ 2.  Although it is not clear from the record, the minute order submitted by

15  County Defendants appears to concern Robertson's original (and undisputedly withdrawn) petition

16  for restoration of sanity, not his currently pending one.  At best, that minute order raises a factual

17  dispute, not appropriate for resolution on a motion to dismiss, regarding the status of Robertson's

18  currently pending petition for restoration of sanity.  It does not preclude Robertson from

19  "demonstrat[ing] that he is realistically threatened by a repetition of the violation[s]" alleged in the

20  FAC.  *Armstrong*, 275 F.3d at 860-61.

21          Robertson has established standing to seek injunctive relief for County Defendants' alleged

22  misconduct.  This portion of County Defendants' motion is DENIED.

**CONCLUSION**

24          For the foregoing reasons, County Defendants' motion to dismiss is GRANTED

25  WITHOUT LEAVE TO AMEND to the extent that it seeks to dismiss the Sheriff's Office and

26  Health Services from the first and second causes of action as improper entity defendants under

27

28  ---

[9] County Defendants' request for judicial notice is GRANTED.

United States District Court
Northern District of California

section 1983.  In all other respects, the motion is DENIED.  County Defendants shall file their

answer within 14 days of the date of this Order.

**IT IS SO ORDERED**.

Dated: August 11, 2016



WILLIAM H. ORRICK
United States District Judge